**MADISON–HUNNEWELL BANK,**
Plaintiff/Appellant,

v.

**John T. HURT and Martha Jane
Hurt, husband and wife, De-
fendants/Respondents.**

No. 65766.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 28, 1995.

Philip J. McIntosh, Campbell & Benson, Kirksville, for plaintiff/appellant.

Robert M. Clayton, II, Clayton & Rhodes, Hannibal, for defendants/respondents.

PUDLOWSKI, Judge.

This appeal arises from a "Petition on Notes" filed by Madison–Hunnewell Bank (Bank) against John T. and Martha J. Hurt. In the court-tried case, judgment was entered against John[1] on Counts I and II of the petition. The court discharged Martha from any liability on the notes and awarded attorney's fees to the bank. The Bank appeals. We reverse and remand with instructions.

In 1980, John was retired and operated a farming business. He had done business with the Bank since 1929. Martha was primarily a housewife but had held other jobs outside of the home. The farming operation was considered John's business.

On September 29, 1980, John and Martha executed Note No. 13577 (first note) in favor of the Bank in the amount of twenty-six thousand five hundred dollars ($26,500.00). On April 13, 1985, John executed Note No. 14643 (second note) in favor of the Bank in the amount of six thousand five hundred dollars ($6,500.00). As collateral for the first note, the Bank retained a security interest in farm equipment, including: 1) a 1972 Ford 8000 farm tractor; 2) a 1976 Cyclo International planter; and 3) a Midland Dirt Scoop. The collateral for the second note was identical to that of the first note. The Bank perfected its security interests by filing UCC–1 statements, which were signed by John alone. The collateral remained in the possession of the Hurts.

Subsequent to the execution of the aforementioned security agreements, Mercantile Bank of Shelbina (Mercantile) obtained a blanket lien on all of the Hurt's farm equipment. At that point in time, the lien acquired by Mercantile was junior to that of the Bank.

---

**1.** For clarity, we will refer to the Hurts by their individual names; no disrespect is intended.

The Bank, after Mercantile obtained its lien, allowed its security interest to lapse. As a result, the Bank lost its seniority with respect to Mercantile's competing interest in the collateral.

In March, 1987, the Hurts did not have the cash with which to pay the Bank. John observed that Mercantile was conducting a foreclosure sale in the area. Believing that there was no way to pay the Bank except by selling the farm equipment, John asked Mercantile to place the farm equipment in the sale, which it did. John placed the equipment in the sale voluntarily. At the time of the sale, John believed the Bank had first priority with regard to the proceeds from the collateral and intended the proceeds from the sale to satisfy his obligation to the Bank. The Hurts received no proceeds from the sale but estimate that their equipment brought about thirty thousand dollars ($30,-000.00). All of the proceeds from the sale went to Mercantile. The Bank received nothing.

The Hurts remained in default on the notes. The Bank filed its Petition on Notes against both John and Martha. During trial, the Bank abandoned its claim against Martha on the second note. The court found that the Bank had unjustifiably impaired the collateral by allowing its security interest to lapse. The court entered its judgment against John for the balance due on each of the notes as of March 1987, the date the collateral was sold. Judgment was entered for Martha on both counts. This appeal followed.

■ On review of a court-tried case, we sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law or erroneously applies it. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We accept the evidence and inferences favorable to the prevailing party and disregard all contrary evidence. *Behen v. Elliott,* 791 S.W.2d 475, 476 (Mo.App.E.D.1990). We defer to the factual findings of the trial judge, who is in a superior position to assess credibility. *Brawley v. McNary,* 811 S.W.2d 362, 365 (Mo. banc 1991). However, we independently evaluate the court's conclusions of law. *Bradley v.*

*Mullenix,* 763 S.W.2d 272, 275 (Mo.App.E.D. 1988).

The Bank's first contention of error is that the trial court improperly discharged Martha from her obligation on the first note. The court found that because the Bank had unjustifiably impaired the collateral, Martha was discharged from her obligation on the first note.

Because the court did not make any specific finding regarding her status as either an accommodation party or a co-maker, we must first address that issue in order to determine to what relief, if any, Martha was entitled.

In *Landmark KCI Bank v. Marshall,* 786 S.W.2d 132 (Mo.App.W.D.1989), the Western District of this court set out the principles by which we determine accommodation party status:

[t]he Uniform Commercial Code defines an accommodation party as "one who signs the instrument in any capacity for the purpose of lending his name to another party to it." Sec. 400.3–415(1). An accommodation party becomes liable "in the capacity in which he has signed." Sec. 400.3–415(2); *McIntosh v. White,* 447 S.W.2d 75, 78 (Mo.App.1969). A person who signs a note in order to enable another party to the paper to obtain a loan is an accommodation party. *Ibid.; Lindsey v. Zeller,* 10 Kan.App.2d 4, 690 P.2d 394, 395 (1984). Whether a person is an accommodation party is a question of the intention of the putative accommodation party, accommodated party, and of the holder of the paper at the time of the signatures. Anderson, Sec. 3–415:16 at 351. Whether a party to a negotiable instrument is a co-maker or accommodation maker depends upon the intentions of the signers at the time of the execution of the paper. *Utah Farm Prod. Credit Assn. v. Watts,* 737 P.2d 154, 158 (Utah 1987); Anderson, Sec. 3–415:16 at 351. A co-maker who claims that the signature was for accommodation bears the burden to prove that contention. Ibid. 3–415:12 at 349. Parol evidence is admissible to make that proof. *Wright v. Wright,* 567 S.W.2d 371, 374 (Mo.App. 1978).

The assessment of the intention to be bound only as a surety, and so as an accommodation party, is a question of fact to be determined from the language of the paper and from the amalgam of circumstances. *Id.* at 374–375; White & Summers, Sec. 13–14 (1988). The two primary indicia of accommodation status are that the accommodation party receives no direct benefit from the proceeds of the instrument, and that the signature is needed by the maker to acquire the loan. *Ramsey v. First Nat'l Bank & Trust Co.*, 683 S.W.2d 947, 954 (Ky.App.1984); *McIntosh v. White*, 447 S.W.2d at 78.

*Landmark KCI Bank v. Marshall,* 786 S.W.2d at 137–138.

■ Applying these principles to the facts before us, it is clear that Martha was not an accommodation party. The burden was on Martha to prove that she was an accommodation party. The first note, which was signed by both John and Martha stated:

I, we, or either of us, jointly and severally promise to pay to the order of Bank of Hunnewell, Hunnewell, Missouri, 66443, 26500 dollars....

There is no evidence which contradicts the express language of the note. Neither Martha nor John testified that only he received the benefit of the proceeds. Although Martha had worked outside of the home at different points in her life, it is unclear whether or not she was working at the time the note was executed. It appears that the farming business was the sole source of the Hurts' income. Although there was testimony that the farming operation was "John's business," there is no evidence regarding how the proceeds from the loan were used. Moreover, the fact that Martha did not sign the second note indicates that her signature was not necessary in order to get the first loan. Her signature was exactly that of a co-maker. She did not sign the note in any anomalous manner that would indicate otherwise. The record is devoid of any testimony regarding the intention of the parties at the time the note was executed except for the express language of the note. An examination of the note itself results in only one possible conclusion: Martha was a co-maker. There is no indication that the parties intended otherwise. Martha failed to present any evidence to the contrary; she failed to meet her burden of proving that she was an accommodation party. Accordingly, we hold that Martha was a co-maker on the first note.

■ We next examine if Martha was entitled to any discharge based upon her status as co-maker. Section 400.3–605(f) [2] may have provided Martha some relief. If John had provided all of the collateral for the loan and the Bank unjustifiably impaired the value of the collateral, Martha would have been discharged to the extent the impairment of the collateral affected her rights of contribution against John under 400.3–605(f).

■ However, there is no evidence that the collateral was supplied solely by John other than the fact that the Hurts considered the farming business to be John's business. In their answer to the original petition, paragraph number 3, the Hurts state: "... defendants also made and delivered to plaintiff as security for said note a mortgage on certain property owned by defendants...." (emphasis supplied). It does not state certain property of defendant, John Hurt. No evidence was presented pertaining to the actual title of the farm machinery. No evidence was presented showing that the funds used to purchase the farm equipment originally came solely from John's separate monies or accounts. In other areas of the law, notably divorce proceedings, there is a presumption that property acquired during the course of a marriage is joint property. *See* § 452.330.2 RSMo 1994. We find this to be instructive. In the light of the admission in their own pleading and the lack of contrary evidence, we hold that the Hurts owned the farm equipment jointly. Therefore, Martha was not entitled to relief under § 400.3–605(f) and should have been liable on the first note to the same extent John is liable.

The Bank next avers that the court erred in limiting John's liability on both notes to only the principal and interest that had accrued as of the date of the sale. We agree.

**2.** All Citations are to RSMo Supp.1993 unless otherwise noted.

The contract liability of the maker of a note is unconditional and absolute. The maker engages to pay the instrument according to its tenor. *Landmark KCI Bank v. Marshall,* 786 S.W.2d at 136. The liability of the obligee on a note is discharged to the extent of its payment to the holders. § 400.3–603(1). The rule is that the payor of a note exposes himself to double liability if he delivers his payment to someone other than the holder. However, there is one exception to the rule: if the payor can show that the one to whom he paid the money stood in the position of agent to the owner of the note, he is entitled to the benefit of payment. *Sooter v. Magic Lantern, Inc.,* 771 S.W.2d 359, 362 (Mo.App.S.D.1989); *Tedesco v. Bekker,* 741 S.W.2d 896, 898 (Mo.App.E.D.1987). Section 400.3–603(c) states that if tender of payment is made to a person entitled to enforce the agreement, the obligation of the obligor to pay interest after the due date is discharged. These principles of law can be readily applied to the case at bar.

John did not tender payment to the bank. The notes called for tender of payment at the office and place of business of the Bank. John never tendered payment of the notes to the Bank. He attempted to tender payment of the notes via the voluntary sale of the collateral at an unrelated foreclosure sale run by Mercantile. Moreover, there is no possible way to construe that Mercantile was the agent expressly or impliedly, of the Bank. There is no basis in the law to limit the obligation to only the principal and accrued interest as of March, 1987. The Hurts cite 45 Am.Jur.2nd, *Interest and Usury,* § 102, in support of their position. We are unable to find any supporting case law and find it inapplicable to the facts before us. Therefore, we hold that the trial court erred in limiting the liability on both notes to the date of the sale of the collateral.

Our holdings on these issues are dispositive of the appeal. Accordingly, we need not address the Bank's other issue on appeal.

We reverse and remand with instructions that the trial court 1) enter judgment against Martha on Note No. 13577 and determine full interest and principal to date; and 2) enter judgment against John on Notes No. 13577 and 14643 and determine full interest and principal to date.

SMITH, P.J., and WHITE, J., concur.