# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1850

_____

Lauren Strawn, also known as Lauren    *
S., by and through co-guardians Karl C.   *
& Laurie C.; Karl Crawford, also          *
known as Karl C., Parent; Laurie         *
Crawford, also known as Laurie C.,     *
parent,                                 *
                                        *

       Plaintiffs/Appellants,     *

                                        *    Appeal from the United States
      v.                          *    District Court for the Western
                                        *    District of Missouri.

Missouri State Board of Education;    *
Missouri Department of Elementary   *
and Secondary Education,          *
                                        *

       Defendants/Appellees,      *

                                        *

Missouri School for the Severely    *
Handicapped; Missouri School      *
for the Deaf,                *
                                        *

       Defendants.            *

_____

Submitted: December 15, 1999

Filed: April 26, 2000

_____

Before BEAM and HEANEY, Circuit Judges, and KYLE,[1] District Judge.
_____

BEAM, Circuit Judge.

Lauren Strawn appeals the district court's entry of judgment for the State of Missouri on her Individuals with Disabilities Education Act (IDEA) claim. We reverse.

## I.    BACKGROUND

Lauren was born in 1979. She has multiple disabilities, including profound deafness, cerebral palsy, mental retardation, and spastic quadraparesis. In 1984, Lauren's parents, Laurie and Karl Crawford, sought her admission to the Missouri School for the Deaf. However, Lauren was deemed ineligible for admission because a psychological evaluation revealed that she had severe delays, lack of age-appropriate self-help skills, and a functioning level of moderate retardation. Lauren was then placed with the Missouri State Schools for the Severely Handicapped where she received an Individualized Education Program (IEP) from 1985 to 1993. During this time, Lauren's parents received annual notification of Lauren's IEPs and placement, and of their right to object.

At the Missouri State Schools for the Severely Handicapped, Lauren received an education in which communication skills were neither a priority nor the subject of intensive focus. However, in 1992, Lauren was assigned to Barbara Friskey, a teacher who had some sign language ability. In November 1993, Friskey wrote in a report that Lauren had shown "sudden improvement," most likely due to her recent placement with a teacher who used some sign language. Following this report, Lauren was referred to the Missouri School for the Deaf where she enrolled in January 1994. A year later,

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

Lauren had made significant progress in her sign language vocabulary and made marked improvement in self-care, communication and socialization skills.

In January 1995, Lauren's parents requested a resolution conference with school officials to determine whether Lauren had been denied a free appropriate public education from 1985 to 1994.[2] The resolution conference decision was written by Wanda McPheron, the Assistant Superintendent for the Missouri State Schools for the Severely Handicapped. McPheron concluded that Lauren had received a free appropriate public education. Nonetheless, in an effort to settle the matter, she awarded Lauren two years of compensatory education.

Lauren's parents then requested a due process hearing before a three-member state administrative panel. The due process panel unanimously decided that Lauren had not received a free appropriate public education, but, again, only awarded two years of compensatory education. Lauren's parents then brought this action in federal district court, seeking one year of compensatory education for every year in which Lauren did not receive a free appropriate public education. The district court reversed the state panel, holding that the action brought by Lauren's parents was untimely because it was barred by the equitable doctrine of laches.[3] The district court also held that Lauren had received a free appropriate public education. Lauren appeals.

---

[2]The purpose of the IDEA is to ensure that disabled children receive a free appropriate public education. See 20 U.S.C. § 1400(d)(1)(A). To accomplish this purpose, the IDEA grants parents the right to challenge any annual IEP or placement decision at an impartial due process hearing. See 20 U.S.C. § 1415(f)(1). If the parents object to the result of the due process hearing, the parents have a right to bring an action in federal court. See 20 U.S.C. § 1415(i)(2)(A).

[3]Laches prevents a court from granting relief to a claimant who has unreasonably delayed or been negligent in asserting a claim so that the opposing party has been prejudiced. See Black's Law Dictionary 879 (7th ed. 1999).

## II. DISCUSSION

### A. Was Lauren's Claim Timely?

The IDEA has no statute of limitations for seeking administrative review of an IEP or placement decision. When a federal law contains no statute of limitations, courts may borrow from the most closely analogous state statute of limitations unless doing so would frustrate the policy embodied in the federal law on which the claim is based. See Aaron v. Brown Group, Inc., 80 F.3d 1220, 1223 (8th Cir. 1996). If no state statute of limitations passes muster, courts may apply the equitable doctrine of laches. See DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 162 (1983).

The district court applied laches because it determined that there was no Missouri statute of limitations that provided an appropriate balance between the interests of the parties and the legislative goals of the IDEA. The district court alternatively held that the most appropriate statute of limitations to apply would be the Missouri Human Rights Act. See Mo. Ann. Stat. § 213.111. After conducting de novo review on this question of law, we endorse the district court's alternative holding.[4]

In an IDEA claim for compensatory education, we apply the two-year statute of limitations for Missouri Human Rights Act claims because a civil rights claim is the most closely analogous cause of action and a two-year period does not frustrate the federal policy embodied in the IDEA. Lauren agrees that an IDEA claim is closely analogous to a civil rights claim, but argues for application of Missouri's five-year "catch-all" statute of limitations for personal actions. See Mo. Ann. Stat. § 516.120(4). According to Lauren, the five-year statute should apply because it has been applied to claims brought under 42 U.S.C. § 1983—another federal civil rights law that does not

---

[4]Because we apply a statute of limitations, we do not review the district court's laches analysis.

have a statute of limitations.  See Garrett v. Clarke, 147 F.3d 745, 746 (8th Cir. 1998) (applying Mo. Rev. Stat. § 516.120(4) to a section 1983 claim).  We reject Lauren's contention because a five-year statute of limitations would frustrate the federal policy embodied in the IDEA.[5]

The statutory framework of the IDEA and the statute's purpose show that a five-year statute of limitations would frustrate the federal policy of quick resolution of IDEA claims.  The IDEA provides for substantial parental involvement in the IEP process, annual reviews, and annual notice to parents of procedural rights.  See 20 U.S.C. § 1414(d)(B)(i) (parents must be part of IEP team); 20 U.S.C. § 1414(d)(4)(A)(i) (annual review); 20 U.S.C. § 1415(b)-(d) (notice of procedural rights).  This statutory scheme mandating parental participation in an annual decision-making process demonstrates that Congress intended for parents to be actively implicated in the expeditious resolution of IDEA concerns.  In addition, children protected by the IDEA benefit greatly from quick resolution of disputes because lost education is a substantial harm, and that harm is exactly what the IDEA was meant to prevent.  See Murphy, 22 F.3d at 1193-94 (central federal policy of IDEA is not to lose "day after irreplaceable day of educational opportunity").

A two-year statute of limitations does not frustrate federal policy.  A two-year limitation provides for relatively quick resolution of the claims so that important years of education are not lost.  Two years is also not such a brief period that it undermines

_____

[5]We acknowledge that two other circuits have borrowed "catch-all" state statutes of limitations for personal actions for IDEA claims.  See Manning v. Fairfax County Sch. Bd., 176 F.3d 235, 239 (4th Cir. 1999) (applying Virginia's one-year "catch-all" statute of limitations for personal actions to IDEA claims); Murphy v. Timberlane Reg'l Sch. Dist., 22 F.3d 1186, 1194 (1st Cir. 1994) (applying New Hampshire's six-year "catch-all" statute of limitations for personal actions to IDEA claims).  However, we will not automatically borrow the "catch-all" personal action statute of limitations of Missouri if it frustrates federal policy.

the IDEA policy of providing parents the opportunity to protect their disabled children's rights. See Manning, 176 F.3d at 239. Thus, we apply the two-year statute of limitations to IDEA claims.[6]

Lauren also argues that we should apply Missouri law to toll the statute of limitations while she was a minor. See Mo. Ann. Stat. § 516.170. However, even if the state can be subjected to this section, we decline to apply a tolling provision for minors because tolling the statute of limitations for an entire childhood would frustrate federal policy even more than a five-year statute of limitations.[7] See Chandler v. Presiding Judge, Callaway County, 838 F.2d 977, 980 (8th Cir. 1988) (although state statute of limitations applies, state tolling provision should not be used if inconsistent with federal policy).

We now apply the two-year statute of limitations. Because Lauren's parents first challenged her placement in January 1995, any claims that she had been denied a free appropriate public education before January 1993 are time barred. Thus, we must consider whether Lauren was denied a free appropriate public education between January 1993 and January 1994—the date she was admitted to the Missouri School for the Deaf.

---

[6]Applying the statute of limitations from the Missouri Human Rights Act does not create any sovereign immunity concerns. See H.S. v. Board of Regents, Southeast Missouri State Univ., 967 S.W.2d 665, 673-74 (Mo. Ct. App. 1998) ("[t]he state and its subdivisions are treated the same as other employers under the Missouri Human Rights Act").

[7]We note that this is not a case where the parents failed to participate in the IEP and placement process or the parents intentionally acted contrary to the interests of the child.

## B.    Did Lauren Receive A Free Appropriate Public Education?

The district court held that Lauren was not entitled to compensatory education because her IEPs were reasonably calculated to enable her to receive an educational benefit.  In reviewing a final determination of a state administrative panel's resolution of an IDEA claim, a district court should give "due weight" to the state proceedings.  See Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 610 (8th Cir. 1997).  The district court must give "due weight" because the administrative panel had an opportunity to observe the demeanor of the witnesses and because the court should not substitute its own notions of sound educational policy for those of the school authorities that they review.  See id.  On appeal, whether the state has offered a free appropriate public education is a mixed question of law and fact and the district court's ultimate determination is reviewed de novo.  See id. at 611.  In the absence of a mistake of law, we review the district court's factual determinations for clear error.  See Blackmon v. Springfield R-XII Sch. Dist., 198 F.3d 648, 655 (8th Cir. 1999).

Applying these standards, we hold that the district court erred in its determination that Lauren received a free appropriate public education.  For starters, the district court does not acknowledge or reference the "due weight" standard of review.  Moreover, we find that the record justifies the due process panel's decision.  The panel concluded that the education Lauren received at the Missouri State Schools for the Severely Handicapped with respect to sign language instruction was "wholly deficient."  Underlying this conclusion was the panel's finding that all the evaluations of Lauren over the years showed an intensive need for a language-based program that adequately considered her profound deafness.  After reviewing the record and according "due weight" to the unanimous panel decision, we conclude that Lauren did not receive a free appropriate public education for the one year that falls within the statutory limitations period.

The only remaining question is remedy. The district court made no award, and the state due process panel based its award on a finding that Lauren had not received a free appropriate public education for about eight years. With this history, we think the determination of a remedy for a year of lost education should properly lie with a state administrative panel in the first instance. However, we note that Lauren may be entitled to more than just one year of compensatory education because, as the resolution conference acknowledged, "the optimum time for language acquisition is at a younger age than Lauren's present age." Thus, we remand to the district court with an instruction to refer the matter back to the state panel for a determination of the appropriate compensatory education remedy.

III.    CONCLUSION

For the foregoing reasons, we reverse and remand for proceedings consistent with this opinion.

HEANEY,  Circuit Judge, dissenting.

I agree that Lauren Strawn was denied the free appropriate public education promised her under the Individuals with Disabilities Act (IDEA), and that the district court clearly erred by concluding otherwise. However, because the two-year statute of limitations for the Missouri Human Rights Act (MHRA), see Mo. Ann. Stat. § 213.111 (West Supp. 2000), frustrates the policy embodied in the IDEA, it cannot be borrowed. Furthermore, even if the two-year limitations period was properly borrowed, Lauren's claim is timely, and she is entitled to the 1836 hours of compensatory education awarded her by the administrative panel.

If the MHRA is the most closely analogous state statute, our court may borrow its statute of limitations only if doing so would not frustrate the policy embodied in the IDEA. See Aaron v. Brown Group, Inc., 80 F.3d 1220, 1223 (8th Cir. 1996). The

IDEA mandates that all disabled children have the opportunity to receive a free appropriate public education, and that the child's rights and those of his/her parents are protected. See 20 U.S.C. § 1400(d)(1) (1999). Further, the statute encourages parents and school officials to resolve disputes over the disabled child's education, so that the child is not needlessly deprived of the education mandated by law. See Murphy v. Timberlane Reg'l Sch. Dist., 22 F.3d 1186, 1193-94 (8th Cir. 1994). Both of these policies are frustrated by a two-year limitations period.

First, the two-year statute of limitations discourages parents from working with school officials to resolve their differences. Parents in these cases are required to interact with school officials. A school committee drafts an Individual Education Plan (IEP) for their child describing how the child's educational needs will be met during the academic year. If the parents disagree with the IEP, they voice concerns and try to reconcile their differences with school officials. Because a two-year limitations period forecloses the option of compensatory education for any lengthier period, parents will be discouraged from working with school officials to determine the best method of education for their child. Instead of encouraging discourse, the limitations period will require parents to maintain an adversarial posture with school officials and to institute litigation before all efforts to negotiate the matter have been completed.

Second, a two-year statute of limitations will most harm disabled children who have been deprived of an appropriate education for a period extending beyond the two years. For example, in this case, the administrative panel found that Lauren was deprived a free appropriate public education for nine years, and that she required the equivalent of 1836 hours of compensatory education. The two-year limitations period, as pointed out by the majority, only compensates Lauren for the education she was deprived during the 1993-94 academic year, just one of the nine years. Thus, the two-year limitations period will effectively prevent many disabled children, like Lauren, from ultimately receiving their statutorily-guaranteed education.

Our court should instead borrow Missouri's five-year "catch-all" statute of limitations for personal actions, see Mo. Ann. Stat. § 516.120(4) (West Supp. 2000), because it better serves the policy goals of the IDEA. A five-year limitations period encourages parents to work with school officials to determine the best education plan for their disabled child. It does not punish the child when the parents attempt to resolve their differences with school officials, and it ensures, as is central to the IDEA, that the child ultimately receives a free appropriate public education. Because borrowing the MHRA's two-year statute of limitations frustrates the IDEA's policies, Missouri's five year catch-all statute of limitations is the more appropriate.

Regardless whether a two or five-year limitations period applies, Lauren's claim is timely. Under both the MHRA and Missouri's catch-all statute, the limitations period begins to run when the damage is sustained and objectively capable of ascertainment. See Heilman v. American Family Mut. Ins. Co., 931 F. Supp. 658, 660 (W.D. Mo. 1996) ("The statute of limitations period for purposes of Title VII and the MHRA begins to run on the date that the allegedly discriminatory act took place and the plaintiff was aware of the action."); Klemme v. Best, 941 S.W.2d 493, 497 (Mo. 1997) (en banc) ("Section 516.120(4)'s limitation begins to run when damage is sustained and objectively capable of ascertainment.").

Under the IDEA, parents must be given prior written notice whenever the state educational agency refuses to initiate or change the child's educational placement. See § 1415(b)(3)(B). Such notice must, among other things, explain the action, describe other options considered by the agency and inform the parents that procedural safeguards are in place to protect them, see § 1415(c), one of which is the right to request a due process hearing to appeal the action, see § 1415(d)(2)(J).

Prior to January 1994, Lauren was placed in the Missouri State Schools for the Severely Handicapped (SSSH). Each year, Lauren's parents ("the Crawfords") were shown her IEP. They voiced concern that Lauren was not receiving sufficient

communication skills training, and attempted to work with school officials to remedy the situation.

In addition to working with school officials, the Crawfords sought Lauren's admission to the Missouri School for the Deaf (MSD) six times between 1985 and 1993. Although Lauren was refused admission each time, MSD never notified the Crawfords, nor did it convey the procedural safeguards in place through which they could appeal the decision, both of which are required by the IDEA. The administrative panel found that:

> MSD never provided procedural safeguards of its refusal to admit Lauren as required by law. . . . It appears to the panel as though MSD is attempting to hand off its responsibility to Lauren to SSSH. The panel does not find this position is founded in law. The MSD should have notified the family of its placement recommendations. It is clear that the SSSH did not have the ability to cause the MSD to accept Lauren so that an appeal to SSSH alone would have been futile. *The parents then had no effective method of appeal available to them during the years that MSD rejected Lauren, between 1984 and until Lauren's eventual acceptance in January 1994.*
> . . .
>
> MSD never notified the parents of the opportunity to appeal its repeated rejections and as aforementioned . . . SSSH had no power to affect this determination.

(App. at 54-55 (emphasis added).)

In addition to not being informed of their right to appeal MSD's decision, the Crawfords did not learn that Lauren's education at SSSH was inadequate until November 1993 when Lauren's special education teacher, Barbara Friskey, prepared her progress report. In the report, Friskey recognized great improvement in every area

because Lauren was receiving signing services. Friskey stated, "Lauren has been in my class for the past one and a half years. During that time we have seen much progress in every area. Much of Lauren's sudden improvement we have attributed to the fact that this is the first time Lauren has had a signing teacher." (Id. at 51.)

Because MSD failed to notify the Crawfords of its refusal to admit Lauren and of their right to seek a due process hearing, the limitations period on Lauren's claim began to run when the damage was objectively capable of ascertainment. The inadequacy of Lauren's education was not ascertainable until Barbara Friskey issued her progress report in November 1993. The Crawfords sought a due process hearing on this matter on July 28, 1995, less than two years later. Because the Crawfords requested a due process hearing within two years of receiving the report, Lauren's claim is not time-barred under either the MHRA or Missouri's catch-all statute of limitations. Accordingly, she is entitled to the full 1836 hours of compensatory education awarded her by the administrative panel.

For this reasons, I respectfully concur in part and dissent in part.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-12-