256 F.Supp.2d 999 (2003)
Lloyd J. BAKER, et al. Plaintiffs,
v.
Ann VENEMAN, Defendant.
No. 2:02CV00024 ERW.
United States District Court, E.D. Missouri, Northern Division.
March 4, 2003.
*1001 George Dale Reesman, WILLIAMS AND RUSMAN, Boonville, MO, for Plaintiff.
Wesley D. Wedemeyer, Office of U.S. Atty, St. Louis, MO, for Defendant.

MEMORANDUM AND ORDER
WEBBER, District Judge.
This matter comes before the Court upon Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment [doc. # 21-1]; Plaintiffs' Motion to Strike [doc. #21-2]; and Plaintiffs' Motion for Summary Judgment [doc. # 22].

I. BACKGROUND FACTS
Plaintiffs Lloyd J. Baker ("Mr.Baker") and Bonnie J. Baker ("Mrs.Baker"), husband and wife, own 133 acres of land in Randolph County, Missouri (hereinafter "the Randolph County property"). Mr. and Mrs. Baker hold the Randolph County property as tenants by the entirety. In 1976, Mr. Baker applied for three loans from the Farmers Home Administration, now referred to as the Farm Service Agency ("FSA"), to refinance delinquent debts on the property. The loan application, dated July 16, 1975, is signed only by Mr. Baker.
FSA approved the loans in the amounts of $3,200.00, $9,100.00, and $47,700.00 on June 21, 1976. The promissory notes, signed by Mr. Baker as "borrower" and Mrs. Baker as "spouse" stated: "FOR VALUE RECEIVED, the undersigned (whether one or more persons, herein called ` Borrower') jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture ..." the principal sums of the loans. Def. Exhs. 2, 3, and 4. The loans were secured by a deed of trust on the Randolph County property. *1002 Mrs. Baker states in her Affidavit that she first learned of the loans when she was asked to sign the notes and deed of trust. She states that she signed the notes and deed of trust only for the purpose of allowing Mr. Baker to obtain the loans. She never made a payment on the loans and was excluded from many communications regarding the loans. Bonnie Baker Aff. ¶ 3. The loans became delinquent, and in 1980, the loans were accelerated; however, due to a national moratorium on foreclosures, no foreclosure sale was conducted. The FSA loans were accelerated a second time on June 30, 1982. FSA scheduled a foreclosure sale; however, it did not take place because Mr. and Mrs. Baker filed a law suit in the Western District of Missouri.
Mrs. Baker states in her Affidavit that she was "very unhappy with farm life" and that she "had a fear of farm animals since [she] was a little girl." She never participated in the farm chores or farm operations. While never obtaining a legal separation or dissolution, Mr. and Mrs. Baker have lived separately since 1981. Counsel for Mrs. Baker advised FSA in writing of Mrs. Baker's separate address in Moberly, Missouri. The letter, dated December 29, 1981, stated:
Enclosed herewith is a request for individual notice of foreclosure sale requested by Bonnie J. Baker.
You will note that Bonnie Baker's address is 1531 Park Drive, Moberly, Missouri rather than the address that you previously had in the file.
Bonnie would like to know, whether formally or informally if there is default on the loan and if you are planning to foreclose.
As you may gather, Mr. and Mrs. Baker do not always share correspondence at Mr. Baker's address, therefore it would save a lot of trouble and possible complications if you would let Bonnie know prior to the time of foreclosure. If you would also let me know in the event there will be a foreclosure, as soon as possible, I will also make sure that Mrs. Baker knows what is going on.
PI. Attach. 2.
Mr. Baker applied for and was approved to receive FSA loans of $5,724.73, $2,564.51, and $73,658.38, secured by a second deed of trust on the Randolph County property in 1987. The promissory notes for the 1987 loans listed "BAKER, LLOYD J. and BONNIE J." as the borrowers and listed "Lloyd & Bonnie Baker" as the "original borrowers." Mr. and Mrs. Baker signed the promissory notes as "borrowers." See Def. Exhs. 1, 2, and 3. Mrs. Baker avers in her Affidavit that FSA required her signature on the notes and deeds of trust and that she complied so that Mr. Baker could obtain the loans. She states that she made no payments on the loans and was not included in FSA communications regarding the loans. Bonnie Baker Aff. ¶ 4.
By April 1989, payment of the FSA loans became delinquent again. In 1989, the loans were restructured. FSA contacted Mrs. Baker and advised her that she must sign the restructured notes. Bonnie Baker Aff. ¶ 5. Three promissory notes, in the amounts of $6,225.13, $2,788.68, and $86,535.48, were signed by Mr. and Mrs. Baker on April 28, 1989. The promissory notes listed "BAKER, LLOYD J. AND BONNIE J." as borrowers and listed "Lloyd J. and Bonnie J. Baker"[1] as "original borrowers." Def. Exhs. 1, 2, and 3. Mrs. Baker states that *1003 she never made a payment on the loans. Bonnie Baker Aff. ¶ 5.
The loan payments again became delinquent in 1992. On March 28, 1994, FSA mailed acceleration notices to Mr. and Mrs. Baker. Mrs. Baker states that she did not receive most of the communications regarding the delinquency. She also states that Mr. Baker signed his name to her registered mail containing the acceleration notice but failed to deliver it to her. Bonnie Baker Aff. ¶ 6. An appeal was filed with the National Appeals Division. The appeal was denied, and the decision was further appealed to the Director of the National Appeals office. FSA agreed to postpone the foreclosure sale to allow a settlement offer, and both Mr. and Mrs. Baker applied for settlement of the FSA debt. Mrs. Baker's application is dated December 15, 1994. Def. Exh. 6. The settlement offer was refused.
Another foreclosure sale was scheduled for January 1996. However, Mr. Baker filed for Chapter 13 bankruptcy protection on January 25, 1996, thereby staying the foreclosure sale. Under the reorganization plan, Mr. Baker was discharged of the portion of the debt exceeding the value of the collateral upon which the debt was secured, and a new loan was established for the remaining debt, which totaled $90,500.00. Mrs. Baker did not join in the bankruptcy. Since the bankruptcy, Mr. Baker has remained current by making installments of $814.00 per month.
On July 25, 2000, FSA directed its finance office to cancel the portion of the debt that was discharged in Mr. Baker's bankruptcy; however, the action was then reversed when it became apparent that Mrs. Baker had not joined in the bankruptcy. Arnold Aff. ¶¶ 22-23. Over a year later, on July 6, 2001, FSA mailed a letter to Mrs. Baker at her residence in Moberly, Missouri, advising that it would begin administrative offset of monies held by the government. Michael P. Arnold, Farm Loan Manager at the United States Department of Agriculture, contacted Mrs. Baker about the remaining debt, which was approximately $27,000.00. Arnold Aff. ¶ 24. On September 5, 2001, Mr. Arnold issued an acceleration notice against Mrs. Baker, which Mrs. Baker appealed on September 25, 2001. The appeal was denied. FSA scheduled a foreclosure sale for March 25, 2002; however, the sale was withdrawn after this action was filed on March 21, 2002.
In the present action, Plaintiffs seek injunctive and declaratory relief to prevent foreclosure on the Randolph County Property. Mrs. Baker denies participating in the application for the loans; she also denies ever making payments on any of the loans. In March of 2001, she signed a money order for Mr. Baker because Mr. Baker had suffered a stroke, but she states the funds were from Mr. Baker's account. Bonnie Baker Counter-Aff. ¶ 4. Based upon Mrs. Baker's lack of participation in the loan process, Plaintiffs conclude that she should not be liable for any outstanding debt. Plaintiffs also allege in the Complaint that FSA discriminated against Mrs. Baker because of her gender by failing to provide her with the same notices that were sent to Mr. Baker and by depriving her of an opportunity to protect her interests. Plaintiffs further allege that FSA is guilty of laches for failure to seek collections from Mrs. Baker until nearly seven years after accelerating the notes against her. Because Mr. Baker's payments are current, Plaintiffs allege that any attempt to seek payment from Mrs. Baker is inappropriate. Plaintiffs ask the Court to enjoin Defendant from continuing with the foreclosure sale and to declare Defendant's actions arbitrary and capricious and in contravention with applicable law.

*1004 II. SUMMARY JUDGMENT STADARD
Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), cited in Donovan v. Harrah's Maryland Heights Corp., 289 F.3d 527, 528-29 (8th Cir.2002) (affirming summary judgment on the plaintiffs negligence claim); Dammen v. UniMed Medical Center, 236 F.3d 978, 980 (8th Cir.2001) (citations omitted) (stating that "summary judgment will be granted if ` the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law""). The United States Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to ` secure the just, speedy and inexpensive determination of every action." ' Celotex, All U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).
"By its terms, [Rule 56(c)(1) ] provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no genuine issue of material fact." Hufsmith v. Weaver, 817 F.2d 455, 460 n. 7 (8th Cir.1987) (quoting Anderson v. Liberty Lobby, Inc., All U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added by Supreme Court)). Material facts are "those ` that might affect the outcome of the suit under the governing law A genuine material fact is one such that " ` a reasonable jury could return a verdict for the nonmoving party.' " Id. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, ... there can be ` no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, All U.S. at 322-23, 106 S.Ct. 2548, quoted in St. Jude Med. Inc. v. Lifecare Intern., Inc., 250 F.3d 587, 595 (8th Cir.2001).
The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. City of Ml. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). The burden then shifts to the nonmoving party who must set forth specific evidence showing that there is a genuine dispute as to material issues. Anderson, 477 U.S. at 249, 106 S.Ct. 2505. To meet its burden, the non-moving party may not rest on the pleadings alone and must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
In analyzing summary judgment motions, the court must view the evidence in the light most favorable to the non-moving party. Morris v. Crawford County, 299 F.3d 919, 921-22 (8th Cir.2002). The nonmoving party is given the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 586, 106 S.Ct. 1348. The court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." Kampouris v. St. Louis Symphony Soc, *1005 210 F.3d 845, 847 (8th Cir.2000). The court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." Id.

III. DISCUSSION
Both parties have moved for summary judgment on Plaintiffs' requests for declaratory and injunctive relief. Both parties believe, and the Court agrees, that no genuine issues of material fact exist in the summary judgment record. In addition to seeking judgment in its favor, Plaintiffs seek to strike certain portions of Michael P. Arnold's Declaration, which was filed by Defendant in support of its Motion for Summary Judgment.

A. Motion to Strike
In support of its Motion for Summary Judgment, Defendant submitted a Declaration by Michael P. Arnold, Farm Loan Manager for the United States Department of Agriculture ("USDA"). In the Affidavit, Mr. Arnold details the history of the loans at issue in this case, both before and after his employment with the USDA. Plaintiffs seek to strike statements in Mr. Arnold's Declaration that characterize the FSA loans as being obtained by both Mr. and Mrs. Baker. See Arnold Aff. ¶¶ 3,4, 5, 7, and 8. Plaintiffs also seek to strike all statements that suggest that the appeals were filed by both Mr. and Mrs. Baker. See Arnold Aff. ¶¶ 10, 11, 12, 14, and 15.
Plaintiffs correctly state that affidavits filed in support of or in opposition to a summary judgment motion must meet the requirements of Federal Rule of Civil Procedure 56. Rule 56(e) requires that affidavits be made upon personal knowledge. Fed.R.Civ.P. 56(e). To the extent affidavits are not based upon personal knowledge, they will not be considered by the Court. See El Deeb v. University of Minnesota, 60 F.3d 423, 428 (8th Cir.1995); Neff v. World Publishing Co., 349 F.2d 235, 254 (8th Cir.1965) (disregarding relevant portions of the plaintiffs affidavit as "totally unsupported by the record and based upon matters beyond his personal knowledge, constituting his conclusions or based upon his interpretation of written documents"). The Court also will not consider statements that are based only upon inadmissible hearsay. See Mays v. Rhodes, 255 F.3d 644 (8th Cir.2001). It appears to the Court that Mr. Arnold based his Declaration upon his review of the loan files and his experience as a Farm Loan Manager. His statements are therefore based upon his personal knowledge and are not inadmissible hearsay. The Court does not believe the statements in Mr. Arnold's Declaration are improper under Rule 56(e), and for these reasons, the Court will deny the Motion to Strike.

B. Motion for Summary Judgment
Plaintiffs seeks summary judgment in their favor based upon this Court's authority to review administrative decisions of federal agencies under the Administrative Procedure Act, 5 U.S.C. §§ 702-706.[2] Plaintiff claims that the FSA decision to foreclose on the Randolph County property was arbitrary and capricious and without observance of the procedure required by law. For summary judgment Plaintiffs argue that (1) Mrs. Baker was an accommodation maker, not a borrower, and therefore is not liable for the debt; (2) foreclosure is inappropriate because Mr. Baker's payments are current; (3) Defendant *1006 is guilty of laches; and (4) foreclosure would defeat the purpose of the Agricultural Credit Act of 1987. In Defendant's separate Motion for Summary Judgment, Defendant argues that Plaintiffs claims must fail and summary judgment should be granted in its favor because (1) Mr. Baker's discharge in bankruptcy had no effect upon Mrs. Baker's liability for the debt; (2) a joint creditor may destroy a tenancy by the entirety by proceeding against the non-bankrupt spouse; and (3) the foreclosure is not barred by either the statute of limitations or the doctrine of laches. As many of the arguments overlap, the Court will consider the summary judgment motions together.

1. Accommodation Party
Plaintiffs argue that Defendant should be enjoined from foreclosing on the Randolph County property because Mrs. Baker signed the promissory notes as an accommodation party, not as a borrower. Under Missouri law, an accommodation party is a party who "signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument...." Mo.Rev.Stat. § 400.3^tl9(a) (1994). "Whether a person is an accommodation party is a question of the intention of the putative accommodation party, accommodated party, and of the holder of the paper at the time of the signatures." See Madison-Hunnewell Bank v. Hurt, 903 S.W.2d 175, 177 (Mo.Ct.App.1995) (citing former § 400.3-415, which was replaced by § 400.3-419). A person is "presumed to be an accommodation party ... if the signature is an anomalous endorsement or is accompanied by words indicating that the signor is acting as a surety or guarantor...." Mo.Rev.Stat. § 400.3-419(c). In absence of the presumption, the co-maker bears the burden of proving that the signature was for accommodation purposes. Hurt, 903 S.W.2d at 177.
In this case, Mrs. Baker's signatures on the promissory notes and deeds of trust are not followed by any indication that she was signing as a surety, guarantee, or accommodation party. In fact, in many instances she signed as "borrower." Thus, it is Mrs. Baker's burden to show that she signed as an accommodation maker. The only evidence she sets forth is her Affidavit, in which she states that she never participated in the farming operations and that she only signed the documents to allow her husband to obtain the loans. Nonetheless, each restructuring of the loan allowed the Bakers, as tenants by the entirety, to avoid foreclosure of their jointly owned property. It is clear, therefore, that Mrs. Baker cannot be an accommodation maker because she was "a direct beneficiary of the value given for the instrument." See Mo.Rev.Stat. § 400.3-419. Whether or not Mrs. Baker enjoyed farming or joined in the loan application does not alter the conclusion that Mrs. Baker received a benefit from and was a comaker on the loans, and Plaintiffs' argument that she was merely an accommodation maker must therefore fail.

2. Tenancy by the Entirety
Second, Plaintiffs argue that Defendant's attempt to recover from Mrs. Baker is inappropriate because Mr. Baker has remained current on his payments since his bankruptcy in 1996. Defendant argues, to the contrary, that Mrs. Baker failed to join in the bankruptcy and therefore remained liable for the debts discharged against Mr. Baker in the bankruptcy. Defendant argues that as a joint creditor, it can appropriately proceed against Mrs. Baker to recover the remaining debt.
Tenancy by the entirety is a form of ownership whereby both spouses own the entire property. See Cox v. *1007 C.I.R., 121 F.3d 390, 392 (8th Cir.1997) (citing Ronollo v. Jacobs, 775 S.W.2d 121 (Mo.1989)). Upon the death of one spouse, "the whole continues" in the surviving spouse. Id. The tenancy cannot be destroyed involuntarily by an individual creditor. In re Garner, 952 F.2d 232, 235 (8th Cir.1991). The tenancy may be destroyed, however, by a joint creditor. Id. (stating that "for a creditor to reach tenancy by the entirety property, the spouses must have jointly acted to burden the property") (citing Kaufmann v. Krahling, 519 S.W.2d 29, 31 (Mo.Ct.App.1975)).
As discussed above, Mr. and Mrs. Baker both signed the promissory notes for the loans at issue in this case. They jointly encumbered the property; therefore, FSA is a joint creditor. The tenancy by the entireties status does not prevent FSA from foreclosing on the Randolph County property to recover the debt owed by Mrs. Baker. See In re Van Der Heide, 164 F.3d 1183 (8th Cir.1999). Additionally, the fact that Mr. Baker has remained current on the portion of the debt restructured pursuant to his bankruptcy does not relieve Mrs. Baker of her obligation on the remainder of the loans.

3. Laches
Plaintiffs state that the loan obligation was last accelerated in 1994, but Defendant did not seek recovery from Mrs. Baker until 2001. Plaintiffs' claim that Defendant thereby failed to exercise diligence in pursuing its claims. Analogizing to the six-year statute of limitations for a money judgment,[3] Plaintiffs conclude that Defendant should be barred from foreclosing on the property by the doctrine of laches.
The equitable defense of laches applies when a plaintiffs unreasonable delay in bringing an action prejudices a defendant. Strawn v. Missouri State Bd. of Educ, 210 F.3d 954, 956 n. 3 (8th Cir. 2000). "There are two kinds of prejudice which might support a defense of laches: (1) the delay has resulted in the loss of evidence which would support defendant's position; or (2) the defendant has changed his position in a way that would not have occurred if plaintiff had not delayed." Goodman v. McDonnell Douglas Corp., 606 F.2d 800, 809 n. 17 (8th Cir.1979). Mere passage of time, without inexcusable delay and injury, is insufficient to constitute laches. Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc., 758 F.Supp. 512, 525 (E.D.Mo.1991). It is well-established that the United States is ordinarily not subject to a defense of laches. See Bostwick Irr. Dist. v. United States, 900 F.2d 1285, 1291 (8th Cir.1990) (recognizing the "longstanding rule that laches does not apply to actions brought by the United States").
Plaintiffs argue that the doctrine of laches should bar Defendant, Secretary of the USDA, from foreclosing on the Randolph County property. The Court finds no reason to ignore the general rule that laches does not apply to the United States. Even if laches were applicable to Defendant, however, the Court finds no unreasonable delay. Plaintiffs first became delinquent on their FSA loans some time prior to 1980, when the loans were first accelerated. The loans were accelerated again in 1982 and for the third time in 1994. On each occasion, foreclosure was postponed for legitimate reasons, *1008 including a moratorium on foreclosures, an attempt to settle, and Mr. Baker's bankruptcy. Defendant again attempted to accelerate against Mrs. Baker in 2000, but Mrs. Baker filed an appeal, which was finally resolved in 2001. Due to the numerous interruptions, the Court does not find any delay in foreclosing unreasonable. Therefore, Plaintiffs' argument for application of the laches doctrine fails.

4. Statutory Purpose

Finally, Plaintiffs argue that they are entitled to summary judgment because any attempt to foreclose upon the Randolph County property contradicts the underlying goals of the Agricultural Credit Act of 1987 and the purpose of the Department of Agriculture. Plaintiffs point out that FSA arose in the 1930s to help farm families keep their land. Loan restructuring, which was included in the 1987 Agricultural Credit Act, prevented mass foreclosures on farms and ranches. Plaintiffs argue that Defendant's attempt to foreclose and liquidate Mr. Baker's livelihood, when Mr. Baker, a farmer, is current in his FSA obligations, is a "back door attempt by basing foreclosure on a purported delinquency by an accommodation maker" and "flies in the face of the goals and objectives upon which the agency was founded." On the contrary, the Court finds that Mr. and Mrs. Baker benefitted from the policy set forth by the Department of Agriculture and the 1987 Agricultural Credit Act when they were allowed to restructure their loans and when foreclosure on the Randolph County property was postponed on at least three occasions. The Court does not believe that the same policies should prevent Defendant from foreclosing on the Randolph County property at this time.

IV. CONCLUSION
In the summary judgment record, there is no dispute of material fact. The facts show that several loans were granted to Plaintiffs on the Randolph County property, which was held by Mr. and Mrs. Baker as tenants by the entirety. Mrs. Baker jointly encumbered the property by signing the promissory notes and deeds of trust. The loans were restructured numerous times, and upon each delinquency the foreclosure sale was postponed. The undisputed facts also demonstrate that Mrs. Baker did not join in Mr. Baker's bankruptcy, which discharged the amount of the debt in excess of the value of the property. Mr. Baker has remained current on his payments for the restructured portion of debt, totaling $90,500.00.
In addition to finding no genuine dispute of material fact, the Court also concludes that Plaintiffs are not entitled to judgment as a matter of law. Mrs. Baker was a comaker on the loans, not an accommodation party. She therefore remains liable on the debt even in light of Mr. Baker's bankruptcy and current payments on the restructured portion of the debt. Even though the property is held as tenancy by the entirety, Defendant may appropriately proceed against Mrs. Baker to recover the remaining debt because Defendant is a joint creditor. Plaintiffs' laches and policy-based arguments are rejected by the Court for these reasons explained above. Thus, the Court concludes that Plaintiffs have failed to show that they are entitled to the requested injunctive relief to prevent Defendant from foreclosing on the Randolph County property. Therefore, Plaintiffs request for summary judgment must be denied, and Defendant is entitled to judgment as a matter of law.
Accordingly,
IT IS HEREBY ORDERED that Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment [doc. # 21-1] is GRANTED.
*1009 IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike [doc. # 21-2] is DENIED.
IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment [doc. # 22] is DENIED.
NOTES
[1] The promissory note for $86,535.48 lists "Lloyd J. and Bonnie J." as original borrowers.
[2] The Administrative Procedure Act provides that "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.
[3] Plaintiffs do not appear to argue that foreclosure is barred by the statute of limitations set forth in 28 U.S.C. § 2415, which provides that "every action for money damages brought by the United States or an officer or agency thereof . . . shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later .. .." 28 U.S.C. § 2415(a).