# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 01-1038, 01-1114

_____

| | |
|---|---|
| Linda R. Gibson; Larry Douglas Brown * | |
| * | |
| Appellants, * | |
| * | Appeal from the United States |
| * | District Court for the Eastern |
| * | District of Arkansas |
| v. * | |
| * | |
| Arkansas Department of * | |
| Correction; Thomas Mars * | |
| * | |
| Appellees. * | |

_____

Submitted: June 13, 2001

Filed: September 12, 2001 (Corrected 10/30/01)

_____

Before LOKEN, MORRIS SHEPPARD ARNOLD, and HALL,[1] Circuit Judges.

_____

HALL, Circuit Judge.

This consolidated appeal requires us to determine whether state officials can be sued in their official capacity for injunctive relief under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Linda Gibson works for the Arkansas Department of Correction. She alleges that her employer discriminated against her because of an alleged disability arising from an on-the-job injury. Larry

_____

[1] The Honorable Cynthia Holcomb Hall, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Brown suffered back injuries while working for the Arkansas State Police. He is suing his former employer for failure to accommodate his alleged disability. Neither district court examined the merits of either case, instead concluding that Congress did not intend for such suits when it created the ADA's remedial scheme. In light of the Supreme Court's recent decision in <u>Board of Trustees of the University of Alabama v. Garrett</u>, 121 S. Ct. 955 (2001), we conclude that the ADA's remedial scheme is not comprehensive and reverse.

I.

In <u>Ex parte Young</u>, 209 U.S. 123, 155-56 (1908), the Supreme Court held that when a state official acts in violation of the Constitution or federal law, he is acting <u>ultra vires</u> and is no longer entitled to the State's immunity from suit. In effect, <u>Ex parte Young</u> creates a legal fiction: a state official stops being a state official when he does something contrary to federal law. The <u>Ex parte Young</u> doctrine permits only prospective injunctive relief; no money damages are available. See <u>Edelman v. Jordan</u>, 415 U.S. 651, 664, 667-68 (1974).

In <u>Garrett</u>, the Supreme Court held that state employees could not sue their employers for money damages under the ADA; the states and their agencies are immune to such suits under the Eleventh Amendment. See <u>Garrett</u>, 121 S. Ct. at 967-68. But the Court did not hold the same for suits against individual defendants in their "official" state capacities. In fact, even though it was not part of the holding of the case, the Court indicated that individuals could sue state officials for injunctive relief under the ADA:

> Our holding here that Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I does not mean that persons with disabilities have no federal recourse against discrimination. Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by the United States in actions for money damages, as well as private

2

individuals in actions for injunctive relief under Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). In addition, state laws protecting the rights of persons with disabilities in employment and other aspects of life provide independent avenues of redress.

Id. at 968 n.9.

The appellees contend that the above statement is mere dictum and this court should rule that suits under Ex parte Young are not available under the ADA. They argue that the statement conflicts with Supreme Court precedent.[2] We disagree.

First, the Garrett footnote is not contrary to Supreme Court precedent. Plaintiffs seek only prospective injunctive relief. The Supreme Court recently explained that when the relief sought is prospective injunctive relief, the request "is ordinarily sufficient to invoke the Young fiction." Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 281 (1997). The Eleventh Amendment is not a bar to "federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to 'end a continuing violation of federal law.'" Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996).

Second, the main case relied on by the State, Seminole Tribe, dealt with a Congressional act markedly different from the ADA: the Indian Gaming Regulatory Act ("IGRA"). In Seminole Tribe, an Indian tribe sued the governor of Florida under IGRA. The Supreme Court held that Ex parte Young did not apply to the tribe's suit

---

[2]Appellees also contend that a decision to permit Ex parte Young suits to enforce the ADA would clash with our own precedent in Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999) (en banc). In Alsbrook, we held that the ADA's remedial scheme prevents a plaintiff from maintaining a § 1983 action against state officials. But Alsbrook is not persuasive here. In Alsbrook, we did not address whether an action under Ex parte Young was available because the plaintiff's claim for injunctive relief was moot. See id. at 1003 n.5. Moreover, our decision in Alsbrook predated the Supreme Court's decision in Garrett.

against the governor because Congress did not intend to authorize federal jurisdiction under Ex parte Young to enforce IGRA. See Seminole Tribe, 517 U.S. at 75 n.17 & 76.

IGRA provides that certain forms of gaming can be conducted on Indian lands only if the gaming complies with a compact entered into by the Indian tribe and the State. See 25 U.S.C. § 2710(d)(1). Upon receiving a request from the Indian tribe to enter into such a compact, "the State shall negotiate with the Indian tribe in good faith to enter into such a compact." 25 U.S.C. § 2710(d)(3)(A). IGRA authorizes the tribe to sue the State in federal district court if the State does not negotiate, but the district court's remedial authority is severely limited. If the court determines that the State failed to negotiate in good faith, it can only "order the State and Indian Tribe to conclude such a compact within a 60-day period." If the State still fails to negotiate, the district court can only order the appointment of a mediator. Finally, if the mediator cannot bring the sides to an agreement, IGRA requires the mediator to inform the Secretary of the Interior, who is empowered to authorize gaming even in the absence of a compact. See 25 U.S.C. § 2710(d)(7)(B).

In holding that the Ex parte Young doctrine was not available to enforce IGRA, the Supreme Court explained: "[W]here Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon Ex parte Young." Id. at 74. As evidence of this remedial scheme that prevented the application of Ex parte Young, the Court cited the statute's limiting of the district court's remedial authority to: 1) ordering the State and the tribe to negotiate a compact within 60 days; 2) if that fails, requiring the parties to submit proposals to a mediator. See id. The Court opined that allowing actions against an official under Ex parte Young would greatly expand the remedial powers available, allowing a district court to issue contempt sanctions against state officials that Congress did not intend to authorize. See id. at 75. We have already commented that

4

<u>Seminole Tribe</u> holds the <u>Ex parte Young</u> doctrine inapplicable in IGRA cases because IGRA revealed a Congressional intent to prescribe a limited remedial scheme. <u>See</u> <u>Santee Sioux Tribe of Nebraska v. State of Nebraska</u>, 121 F.3d 427, 432 (8th Cir. 1997).

There are significant differences between the ADA and IGRA that make use of the <u>Ex parte Young</u> doctrine appropriate for one and not for the other. First, there are several enforcement mechanisms for Titles I and II of the ADA. The ADA makes all the remedies of Title VII of the Civil Rights Act of 1964 applicable to ADA Title I plaintiffs. <u>See</u> 1990 U.S.C.A.A.N. 445, 472. This means that remedies such as equitable orders and contempt proceedings are possible. Equitable relief such as injunctions are also available to enforce ADA rights. Thus, the ADA stands in stark contrast to the IGRA, which only permits the district court to order 60 days of negotiations and then call in a mediator. The Supreme Court's concern that an <u>Ex parte Young</u> suit would permit a plaintiff to seek much stronger remedies than those specified in IGRA itself does not apply to an ADA suit. <u>See id.</u> at 475 (stating that the "full panoply" of remedies are available under the Rehabilitation Act and therefore Title II).

Second, in drafting the ADA, Congress chose to use existing civil rights enforcement mechanisms. <u>See id.</u> at 472; <u>Pona v. Cecil Whittaker's, Inc.</u>, 155 F.3d 1034, 1038 (8th Cir. 1998) ("Congress has provided [Title II of the ADA] with detailed means of enforcement that it imported from Title VII of the Civil Rights Act of 1964 . . . ."). Congress knew that civil rights laws outlawing discrimination on the basis of race and gender had been enforced through district court orders compelling state officials to perform their statutory obligations. It only makes sense to infer that Congress intended for the same orders to issue against state officials in the ADA context. The State argues that the ADA requirement that charges of discrimination first be filed with the EEOC is evidence of a "detailed" remedial scheme meant to exclude use of <u>Ex parte Young</u>. But this requirement was borrowed from Title VII,

5

so it hardly speaks to Congressional intent to create an exclusive system separate from the traditional scope of judicial power.

Third, enforcement of ADA provisions can normally be accomplished by a single official. For example, in this case, the director of the Arkansas State Police can simply be instructed not to apply a discriminatory policy. In contrast, IGRA involved complex negotiations with Indian tribes. As the Court noted, a state official cannot bind her state to a gaming compact. Instead, a governor who negotiated with an Indian tribe needs the state legislature to vote to accept the compact she negotiated. See Seminole Tribe, 517 U.S. at 75. Thus, the ADA is a more suitable candidate than IGRA for Ex parte Young suits designed to change the behavior of specific government officials.

Finally, it made some sense for the Seminole Tribe court to be reluctant to second guess Congress's wishes in the complicated field of negotiations between two sovereigns. The Court was apprehensive about letting district courts structure their own relief against state governors who refused to negotiate with an Indian tribe. In contrast, there is no reason to think that Congress intended to limit the availability of prospective relief against states who continued to discriminate against the disabled. The ADA statute presumes enforcement through equitable orders issued by district courts that target discriminatory conduct. See Utilla v. City of Memphis, 40 F. Supp.2d 968, 977 (W.D. Tenn. 1999) ("Congress has not created a remedial scheme designed for the exclusive enforcement of Plaintiffs' rights under the ADA or Rehabilitation Act. Quite to the contrary, Congress authorized suits like the present one as an appropriate means to vindicate the rights granted under the ADA and Rehabilitation Act.").

Given these differences and the unambiguous language of the Garrett footnote, we conclude that private individuals can sue state officials for injunctive relief under the ADA by using Ex parte Young.

REVERSED.

A true copy.

Attest:

      CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.