# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1140

_____

| | | |
|---|---|---|
| Loren Faibisch, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| University of Minnesota; | * | District of Minnesota. |
| University of Minnesota Board of | * | |
| Regents; National Center on | * | |
| Educational Outcomes; Jim | * | |
| Ysseldike, an individual and in | * | |
| his official capacity, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:   October 18, 2001

Filed:   September 20, 2002

_____

Before WOLLMAN,[1]  Chief Judge, FAGG, and RILEY, Circuit Judges.

_____

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002.  He has been succeeded by the Honorable David R. Hansen.

_____

WOLLMAN, Chief Judge.

Loren Faibisch appeals the district court's grant of the defendants' motion to dismiss. We affirm in part and reverse and remand in part.[2]

**I.**

Faibisch is a legally blind woman who worked at the National Center on Educational Outcomes (the Center) at the University of Minnesota. Her supervisor at the Center was defendant Dr. James Ysseldike. At various times during her employment, Faibisch requested accommodations necessary for her to perform her job. Although she initially received accommodations, disputes arose within the University over which department's budget was to pay for them. Faibisch claims that as a result of the budgetary wrangling, Ysseldike and others at the University failed to accommodate her needs. Ysseldike expressed his frustration over the fact that he considered the accommodations to be too expensive and time-consuming. In addition, he stated that he would not have hired Faibisch if he had known that the Center would be responsible for accommodating her. The Center declined to renew Faibisch's contract, and she was terminated on or about June 30, 1998.

---

[2]Appellant's unopposed motion to strike certain pages from Appellees' Addendum is granted.

Faibisch filed a charge with the EEOC and received a right-to-sue letter. On August 6, 1999, she filed suit against, among others, the University and Ysseldike (collectively, the defendants) alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to e-17, as well as asserting state law claims not at issue in this appeal. She filed an amended complaint on October 19, 1999. On January 26, 2000, she filed a second amended complaint but did not serve it until June of 2000. The second amended complaint asserted an additional claim under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).

## II.

The defendants moved to dismiss the second amended complaint under Fed. R. Civ. P. 12(b)(1), (6), and 12(c). Faibisch moved for a continuance and to strike certain exhibits filed with the defendants' motion. The district court granted the defendants' motion for dismissal of the ADA and Rehabilitation Act claims on the basis of sovereign immunity and the Title VII claim for failure to exhaust administrative remedies, and denied Faibisch's motions for continuance and to strike.

### A. The ADA Claim

The district court granted the defendants' motion to dismiss the University because it found that the Eleventh Amendment barred Faibisch's ADA claim. In Board of Trustees of the University of Alabama v. Garrett,

531 U.S. 356 (2001), the Supreme Court ruled that a state is immune from suit under Title I of the ADA unless it waives its sovereign immunity. On appeal, Faibisch contends that the state of Minnesota waived its sovereign immunity by virtue of a law that was enacted after the district court's decision in her case. See 2001 Minn. Sess. Law Serv. Ch. 159, § 1.05, Subd. 4 [hereinafter Chapter 159].[3] The University counters that the enactment of the new law does not revive Faibisch's claim because it does not waive the state's sovereign immunity to ADA suits brought in the federal courts, and that in any event the new statute does not apply retroactively.

To waive sovereign immunity, a state must make a clear, unequivocal statement that it wishes to do so. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238-40 (1985). A state's interest in sovereign immunity pertains not only to whether it may be sued but also to where it may be sued. Id. at 241 (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984)).

---

[3]Chapter 159 states:

An employee, former employee, or prospective employee of the state who is aggrieved by the state's violation of the Americans with Disabilities Act . . . may bring a civil action against the state in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of the act.

The only language in Chapter 159 that could possibly be construed to indicate a waiver of sovereign immunity for cases in federal court is the phrase "in any court of competent jurisdiction." The Supreme Court has ruled, however, that such language is not a clear enough indicator that a state has waived its sovereign immunity to suits in federal court. See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 676 (1999) (quoting Kennecott Copper Corp. v. State Tax Comm'n, 327 U.S. 573, 577-79 (1946)). We agree with the University that Chapter 159 does not waive the State's immunity to suits in federal court, and thus we need not determine whether the statute applies retroactively.

As to defendant Ysseldike, the district court dismissed the claim on the grounds that the ADA does not permit suits under Ex parte Young, 209 U.S. 123 (1908). Subsequent to the district court's ruling, we held in Gibson v. Arkansas Department of Corrections, 265 F.3d 718, 722 (8th Cir. 2001), that such suits are permitted. Thus, Ysseldike, as a state official, may not rely on the Eleventh Amendment bar.

Ysseldike concedes the effect of our decision in Gibson, but contends that Faibisch's ADA claim still must fail because she lacks standing to pursue injunctive relief. As an initial point, Faibisch argues that the district court failed to indicate which subsection of Rule 12 was applicable to the defendants' standing argument. We have held, however, that if a plaintiff lacks standing, the district court has no subject matter jurisdiction. Friedmann v. Sheldon Cmty. Sch. Dist., 995 F.2d 802, 804 (8th Cir. 1993). Therefore, a standing argument implicates Rule 12(b)(1).

Faibisch further asserts that because Ysseldike offered no materials outside the pleadings on his 12(b)(1) motion, the motion must be treated as a 12(b)(1) facial challenge. In Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990), we stated that "the trial court is free to . . . satisfy itself as to the existence of its power to hear the case." See also id. at 729-30 & n.6 (reviewing facial and factual challenges to subject matter jurisdiction). Because Faibisch's approach would constrain the power of a court hearing a 12(b)(1) motion, we reject her contention that factual challenges arise only when a court considers matters outside the pleadings. When a district court engages in a factual review, it inquires into and resolves factual disputes. W. Neb. Res. Council v. Wyo. Fuel Co., 641 F. Supp. 128, 129-30 (D. Neb. 1986) (cited with approval in Osborn, 918 F.2d at 728 n.5). Here, the district court inquired into the type of relief sought and made factual determinations about the availability of that relief, thereby indicating that its review was factual in nature. Any findings of fact made by the district court are reviewed for clear error. Briley v. Carlin, 172 F.3d 567, 570 (8th Cir. 1999) (citing Osborn, 918 F.2d at 730).

To establish standing, Faibisch must show that it is likely that the remedy she seeks can redress her injury. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (relating third element of three element test for constitutional standing). Under Ex parte Young, plaintiffs are limited to prospective injunctive relief. Gibson, 265 F.3d at 720 (citing Edelman v. Jordan, 415 U.S. 651, 667-68 (1974)). Faibisch argues that if she alleged that she sought or intends to seek reinstatement, she would have standing based on the request for prospective equitable relief. The district

court found, however, that Faibisch had no clear intention of seeking reinstatement. Ysseldike is the only defendant from whom Faibisch may seek relief. Thus, she must show she would be "wronged again in a similar way" by him. See City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983). In Lyons, the Court found that a "threat of injury must be both real and immediate not conjectural and hypothetical." Id. at 102 (quotations omitted). Because Faibisch has not indicated that her job at the Center still exists, or that if it does exist Ysseldike would be her supervisor, she cannot establish a real and immediate threat of injury. Thus, because the district court's determination that Faibisch had no clear intent to seek reinstatement is not clearly erroneous, Faibisch has failed to establish standing under the ADA.

## B. The Rehabilitation Act Claim

The defendants raised two defenses to Faibisch's Rehabilitation Act claim in the district court. While the defendants concede that our decision in Jim C. v. United States, 235 F.3d 1079 (8th Cir. 2000) (en banc) defeats their assertion of sovereign immunity, they urge us to uphold the district court's decision on statute of limitations grounds.

The Rehabilitation Act does not contain a statute of limitations. When a federal statute does not dictate the limitations period, we must look to the most analogous state law and apply the statute of limitations contained therein. Wilson v. Garcia, 471 U.S. 261, 267 (1985); Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 617 (8th Cir. 1995) (citing Goodman

v. Lukens Steel Co., 482 U.S. 656, 660 (1987)).  In Egerdahl, we analogized Title VI and Title IX to §§ 1981 and 1983 and found that the application of Minnesota's personal injury limitations statute was preferable because it was unlikely that the period would ever "'discriminate against federal claims, or be inconsistent with federal law in any way.'"  Id. at 618 (quoting Wilson, 471 U.S. at 279).  We also found that not to apply the six-year limit would fail to take "into account the federal interest in uniformity and certainty."  Id.

We agree with Faibisch's argument that Minnesota's six-year statute of limitations for personal injury actions should be applied to her Rehabilitation Act claim.  In Ballard v. Rubin, 284 F.3d 957, 963 (8th Cir. 2002), we held that the Missouri five-year statute of limitations for personal injuries should apply to an action brought under the Rehabilitation Act.  In doing so, we joined a number of other circuits that have reached the same conclusion.  See  Everett v. Cobb County Sch. Dist., 138 F.3d 1407, 1409 (11th Cir. 1998); Cheeney v. Highland Cmty. Coll., 15 F.3d 79, 81 (7th Cir. 1994); Baker v. Bd. of Regents, 991 F.2d 628, 631-32 (10th Cir. 1993); Hickey v. Irving Indep. Sch. Dist., 976 F.2d 980, 983 (5th Cir. 1992); Morse v. Univ. of Vt., 973 F.2d 122, 127 (2d Cir. 1992); Hall v. Knott County Bd. of Educ., 941 F.2d 402, 407-08 (6th Cir. 1991).  Accordingly, Faibisch is entitled to proceed on her Rehabilitation Act claim, and we reverse that portion of the judgment that dismissed that claim.

## C. The Title VII Claim

Faibisch argues that the district court erred in finding that she did not exhaust her administrative remedies. She also contends that the district court failed to give her notice and an opportunity to respond when it considered matters outside the pleadings, thereby converting the defendants' Rule 12(c) motion to dismiss into a summary judgment motion.

Faibisch moved to strike the EEOC charge that the defendants attached to their motion to dismiss on the ground that it contained matters outside the complaint. When deciding Rule 12(c) motions, however, courts may rely on matters within the public record. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (quoting Missouri ex rel. Nixon v. Couer D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999)). Although Faibisch urges us to ignore the public record exception, she does not argue that an EEOC charge is not a public record. The Ninth Circuit has found that an EEOC charge is a public record. EEOC v. Recruit U.S.A., Inc., 939 F.2d 746, 749 (9th Cir. 1991) (finding that after court lifted seal on complaint EEOC charge became public record). Furthermore, district courts regularly look upon EEOC charges as matters within the public record. See, e.g., Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 782 (W.D. Penn. 2000); Muller v. Topper's Salon & Health Spa, Inc., 99 F. Supp. 2d 553, 554 n.1 (E.D. PA 2000); McBride v. Routh, 51 F. Supp. 2d 153, 155 (D. Conn. 1999) (citing Mack v. S. Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986), rev'd on other grounds sub nom. Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104 (1991)). Accordingly,

we conclude that an EEOC charge is part of the public record, and thus the motion to dismiss was not converted to one for summary judgment by the attachment of a copy of the EEOC charge.

"We review a motion for judgment on the pleadings de novo. We accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000); see also Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc., 991 F.2d 426, 428 (8th Cir. 1993); Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law. Any & All Radio, 207 F.3d at 462.

Faibisch filed an EEOC charge, checked the box indicating sex discrimination, and received a right-to-sue letter. Administrative remedies are exhausted by the timely filing of a charge and the receipt of a right-to-sue letter. See Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994). Nevertheless, the completion of that two-step process constitutes exhaustion only as to those allegations set forth in the EEOC charge and those claims that are reasonably related to such allegations. See id. ("A plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC.").

With regard to her sex discrimination claim, Faibisch's EEOC charge alleged that "[she] was also treated with hostility and adversely, impacting the terms and conditions of [her] employment, due to [her] gender/female." Faibisch may not make a conclusory statement of sex discrimination in the charge and then file suit on whatever facts or legal theory she may later decide upon. See Tart v. Hill Behan Lumber Co., 31 F.3d 668, 673 (8th Cir. 1994) (quoting Rush v. McDonald's Corp., 966 F.2d 1104, 1112 (7th Cir. 1992)).

Faibisch further argues that the district court should have considered her contention that her employment contract was not renewed in part because of gender discrimination. The statement of sex discrimination in the charge follows a long, particularized account of the alleged disability-based discrimination, stating: "Eventually, management refused to renew my employment contract for the upcoming year, resulting in my termination from employment." Even if we were to accept Faibisch's contention that her dismissal was due in part to gender-based discrimination, she set forth no facts in the EEOC charge that established any connection between the alleged gender discrimination and her termination. Accordingly, Faibisch has not exhausted her administrative remedies with respect to the facts set forth in her complaint, and thus she cannot maintain a Title VII claim on her allegations of sex discrimination.

That portion of the judgment dismissing the Rehabilitation Act claim is reversed. In all other respects, the judgment is affirmed. The case is

remanded to the district court for further proceedings with respect to the Rehabilitation Act claim.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.