# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1066

_____

Peter M. Gaona; Annah M. Gaona,      *
                                 *

        Plaintiffs - Appellants,      *
                                 *   Appeal from the United States

v.                              *   District Court for the
                                 *   District of Minnesota.

Town & Country Credit; The Chase     *
Manhattan Bank,                      *
                                 *

        Defendants - Appellees.      *

_____

Submitted: October 7, 2002

Filed: March 31, 2003 (Corrected: 04/08/03)

_____

Before MURPHY, JOHN R. GIBSON, and MELLOY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Appellants Peter and Annah Gaona appeal an order of the district court granting Town & Country Credit and Chase Manhattan Bank summary judgment on all claims. The Gaonas first argue that the district court erred in granting summary judgment on their Truth in Lending Act claim. They contend that their loan was not consummated on January 26, 1999, that Town & Country listed the incorrect final date for rescission on the notice of right to cancel form, and that because this notice was inaccurate, they are entitled to an extended three-year period to rescind. Second, they claim that the district court erred in borrowing the one-year statute of limitations

from the Minnesota Human Rights Act and applying it to the Gaonas' Title III Americans with Disabilities Act claim. They argue that the court should have instead borrowed the Minnesota six-year statute of limitations for personal injury actions. Finally, the Gaonas claim that the district court erred in concluding that section 3605 of the Fair Housing Act and related regulations do not require a lender to provide reasonable accommodations to disabled borrowers. See 42 U.S.C. § 3605 (2000); 24 C.F.R. § 100.120(b) (2002). We affirm the district court's grant of summary judgment on the Truth in Lending Act and Fair Housing Act claims, but reverse its entry of summary judgment against the Gaonas on their Americans with Disabilities Act claim.

The plaintiffs in this case, Annah and Peter Gaona, are married and live in Coon Rapids, Minnesota, a suburb of the Twin Cities. The Gaonas are both deaf, and their primary method of communicating is through American Sign Language. In January 1999, the Gaonas met with loan officer Johnna Giguere at Town & Country's branch office in New Brighton, Minnesota to apply for a residential mortgage loan. The Gaonas contend that during this first meeting, they asked, in writing, for an interpreter and that none was provided. Instead, the Gaonas communicated with Ms. Giguera and others at Town & Country primarily through written notes back and forth. The Gaonas met again with Giguere and with Richard Perkins, another bank official, at the New Brighton branch on January 26, 1999 and signed the loan documents, including the mortgage agreement, promissory note, loan program disclosure, borrower's acknowledgment of final terms, notice of the right to cancel, and acknowledgment of conditional loan consummation. The loan was funded and the money was disbursed on February 1, 1999. Town & Country then assigned the mortgage to Chase Bank of Texas on February 18, 1999. The Gaonas defaulted on the loan sometime during 2000, and in November 2000, Chase attempted to foreclose on the Gaonas' house. The Gaonas then sent Chase notice of their intent to rescind the mortgage on November 6, 2000. Town & Country responded that the Gaonas had received all of the required notices and declined to rescind. The Gaonas then brought

suit in Ramsey County, Minnesota. The state court enjoined the foreclosure pending resolution of the Gaonas' claims, and defendants removed the case to federal court. In their first amended complaint, the Gaonas alleged that Town & Country and Chase violated the Truth in Lending Act (TILA), the Americans with Disabilities Act (ADA), and the Fair Housing Act (FHA) among other claims. The district court granted summary judgment in favor of Town & Country and Chase on all claims.

## I.

The Gaonas argue that Town & Country violated the rescission provision of the Truth in Lending Act. They claim that their mortgage loan was not "consummated" on the closing date of January 26, 1999 because the loan was conditioned on an appraisal review and the terms of the agreement were indefinite.[1] They further contend that if the loan was not "consummated" on January 26, 1999, then the notice of the right to rescind listed an incorrect date of January 29, 1999 as the last day for rescission, a defect which the Gaonas claim should give them an extended three-year right to rescind.

We review the grant of summary judgment de novo, using the same standards that the district court used in its consideration of the summary judgment motion.

---

[1]In making these arguments, the Gaonas primarily rely upon two documents, "Interest Rate Disclosure" and "Acknowledgment of Conditional Loan Consummation." At oral argument, they also pointed to a third document, a HUD form titled "Revised Settlement Statement," which lists the settlement date of the loan as being January 31, 1999. While this document provides circumstantial evidence that the loan settled later than January 26, 1999, the fact that all of the other documents, including the original "Settlement Statement," were executed on January 26, 1999 is more convincing. A closer look at the "Revised Settlement Statement" reveals that it was substantially the same as the original "Settlement Statement." The only apparent difference was that the revised copy subtracted one day's worth of interest.

Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993).  We must examine the record in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences to be drawn from the facts.  Id.  Summary judgment is appropriate if there is no genuine issue of material fact and the non-moving party is entitled to judgment as a matter of law.  Id.  Fed. R. Civ. P. 56(c).

The Truth in Lending Act provides the borrower with the right to rescind within a limited time frame.  It states, "The [borrower] shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section . . . whichever is later . . ."  15 U.S.C. § 1635(a) (2000).  The lender must provide each customer entitled to rescind with two copies of the notice of the right to rescind.  12 C.F.R. § 226.15(b) (2002).  This notice should include the date that the rescission period ends.  12 C.F.R. § 226.15(b)(5).

If the required notice or material disclosures are not delivered, the right to rescind is extended to as much as three years from the consummation of the loan.  12 C.F.R. § 226.15(a)(3).  Consummation occurs on the date "that a consumer becomes contractually obligated on a credit transaction."  12 C.F.R.  § 226.2(a)(13) (2002). The borrower's obligations are defined by the terms of the contract with reference to state law.  12 C.F.R.  § 226.2(b)(3).

The Gaonas argue first that they did not participate in a closing[2] on January 26, 1999 because, according to a document titled "Acknowledgment of Conditional Loan Consummation," the loan was conditioned on a satisfactory appraisal review.  Since

_____

[2]A "closing" is defined under Minnesota law as "the process whereby the documents creating a security interest in real property become effective between the borrower and lender."  See Minn. Stat. § 58.02, Subd. 5 (2002).

this appraisal did not take place until January 29, 1999, the Gaonas claim that the rescission period should have expired three days after that date.

As mentioned above, the applicable regulations define consummation as the point at which "the consumer becomes contractually obligated." 12 C.F.R. § 226.2(a)(13). We agree with the district court that a "condition precedent to the lender's performance does not affect the [consumer's] obligation, and indeed, such a condition precedent also does not mean that the lender is not contractually obligated." Gaona v. Town & Country Credit, No. 01-44-PAM/RLE, 2001 WL 1640100, at *2 (D. Minn. Nov. 20, 2001). The document relied upon by the Gaonas clearly informed them that despite this condition, the loan was "consummated." The appraisal review notwithstanding, the Gaonas became contractually obligated when the loan documents were executed on January 26, 1999.[3]

Second, the Gaonas contend that the terms of the loan remained indefinite and point to the document titled "Interest Rate Disclosure" which states: "The interest rate and terms of your loan are not 'locked in'; the interest rate and terms applicable to your loan remain subject to change until the date the loan is actually funded." However, this form was dated January 12, 1999, two weeks before the mortgage documents were executed; it remained unsigned by the Gaonas; and there is no evidence that Town & Country attempted to change the interest rate or terms of the loan prior to funding. When the Gaonas executed the promissory note on January 26, 1999, the interest rate and other terms of the loan were specified and definite. We conclude that the district court did not err in granting summary judgment to Town & Country on the Truth in Lending Act claim.

---

[3] See, e.g., Ramsey v. Vista Mortgage Corp., 176 B.R. 183, 187 (B.A.P. 9th Cir. 1994) ("Courts recognize the date of signing a binding loan contract as the date of consummation when the lender is identifiable.").

## II.

The Gaonas also claim that the district court erred in applying the one-year statute of limitations from the Minnesota Human Rights Act (MHRA) to their ADA claim. The Gaonas contend that the district court should have instead borrowed the Minnesota six-year statute of limitations for personal injury cases.

"When a federal law has no statute of limitations, courts may borrow the most closely analogous state statute of limitations, unless doing so would frustrate the policy embodied in the federal law." Birmingham v. Omaha Sch. Dist., 220 F.3d 850, 854 (8th Cir. 2000). The district court held that the public discrimination provisions of the MHRA, Minn. Stat. § 363.03, Subd. 3 (2002), were almost identical to those of Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A) (2000). Thus, it applied the one-year statute of limitations under the MHRA and found the Gaonas' claim untimely. See Minn. Stat. § 363.06, Subd. 3 (2002). We review de novo the district court's decision to borrow a particular state statute of limitations. Birmingham, 220 F.3d at 854.

In Wilson v. Garcia, 471 U.S. 261, 268 (1985), the Supreme Court addressed the question of how to select "the most appropriate" or "most analogous" state statute of limitations to apply to a 42 U.S.C. § 1983 claim. The Court held first, that the federal interest in uniformity and the interest in having "firmly defined, easily applied rules" made the selection of the appropriate statute of limitations a question of federal law, id. at 270; second, that "a simple, broad characterization of all § 1983 claims best fits the statute's remedial purposes," id. at 272; and third, that § 1983 claims are best characterized as tort claims for personal injury and that the state statute of limitations for personal injuries should be applied to all § 1983 claims. Id. at 276-280. The Supreme Court extended this reasoning in Goodman v. Lukens Steel Co., 482 U.S. 656, 661-662 (1987), holding that state statutes of limitations for personal injury actions should also be applied to claims under § 1981.

Since the Supreme Court's ruling in Goodman, most Courts of Appeal, with the exception of the Fourth Circuit,[4] have applied the state statute of limitations for personal injury actions to claims under the Rehabilitation Act and the ADA. See, e.g., Everett v. Cobb Cty. Sch. Dist., 138 F.3d 1407, 1409-10 (11th Cir. 1998) (holding that Georgia's statute of limitations for personal injury actions should be applied to discrimination claims brought under the Rehabilitation Act and Title II of the ADA); Soignier v. Am. Bd. of Plastic Surgery, 92 F.3d 547, 551 (7th Cir. 1996) (district court correctly applied Illinois' statute of limitations for personal injuries as the most analogous limitations period for plaintiff's Title III ADA claim); Baker v. Bd. of Regents, 991 F.2d 628, 632 (10th Cir. 1993) ("Because a [Rehabilitation Act] section 504 claim is closely analogous to section 1983, we find that section 504 claims are best characterized as claims for personal injuries."); Morse v. University of Vermont, 973 F.2d 122, 127 (2d Cir. 1992) ("[W]e now hold that actions under § 504 of the Rehabilitation Act are governed by the state statute of limitations applicable to personal injury actions."); Hickey v. Irving Indep. Sch. Dist., 976 F.2d 980, 983 (5th Cir. 1992) (magistrate correctly adopted Texas statute of limitations for personal injury actions as the limitations period applicable to plaintiff's Rehabilitation Act claim).

After the district court's opinion in this case, our circuit joined the majority of circuits in applying the state statute of limitations for personal injury actions to claims under section 504 of the Rehabilitation Act. See Ballard v. Rubin, 284 F.3d 957, 963 (8th Cir. 2002); Faibisch v. University of Minnesota, 304 F.3d 797, 802 (8th Cir. 2002).

Town & Country continues to assert that Strawn v. Missouri St. Bd. of Educ., 210 F.3d 954, 957-58 (8th Cir. 2000), the case relied upon by the district court,

_____

[4]See Wolsky v. Med. Coll. of Hampton Rds., 1 F.3d 222, 223-225 (4th Cir. 1993).

-7-

should control.[5]  In <u>Strawn</u>, we held that the district court's application of Missouri's five-year personal injury limitations period to an Individuals with Disabilities Act (IDEA) claim would frustrate federal policy and that the two-year statute of limitations for the Missouri Human Rights Act should be applied instead.  <u>Id.</u> at 957. We explained that Missouri's five-year limitations period would undermine the IDEA statutory scheme, which required that IDEA disputes be resolved expeditiously.  <u>Id.</u> There are no corresponding federal policy concerns counseling against use of the personal injury statute in this case.[6]  To the contrary, our selection of the same limitations period for both ADA and Rehabilitation Act claims promotes "the federal interest in uniformity and certainty."  <u>See</u> <u>Faibisch</u>, 304 F.3d at 802; <u>see also</u> <u>Egerdahl v. Hibbing Cmty. Coll.</u>, 72 F.3d 615, 617-18 (8th Cir. 1995) (applying personal injury statute of limitations to both Title VI and Title IX claims, citing the federal interest in uniformity).

Town & Country also argues that the Gaonas' claim under Title III of the ADA addresses a different type of discrimination than that addressed by section 504 of the Rehabilitation Act.  Title III of the ADA prohibits discrimination on the basis of disability in  *public accommodations*, while section 504 of the Rehabilitation Act (and Title II of the ADA) prohibit discrimination on the basis of disability *by public entities*.  The Seventh Circuit has explained that this is a distinction without a

---

[5]Although the <u>Ballard</u> and <u>Faibisch</u> cases were handed down after briefs were filed in this case, Town & Country submitted these cases as supplemental authorities. <u>See</u> Fed. R. App.  P. 28(j).  While Town & Country concedes that these cases are relevant, it argues that they are not controlling.

[6]Policy concerns could also weigh in favor of applying the state personal injury statute of limitations.  For example, in <u>Birmingham v. Omaha Sch. Dist.</u>, 220 F.3d 850, 854-55 (8th Cir. 2000), we concluded that the lack of a closely analogous state statute combined with the policy concerns behind the IDEA required that the district court apply the two-year Arkansas personal injury statute of limitations, rather than the thirty-day limitations period of the Arkansas Administrative Procedure Act.

difference; because Title II and Title III of the ADA have the shared purpose of eliminating disability discrimination, they also borrow the same state limitations periods. See Soignier, 92 F.3d at 551, n. 3. We have held that Congress intended Title II of the ADA to be interpreted consistently with the Rehabilitation Act, Pottgen v. Mo. St. High Sch. Activities Ass'n, 40 F.3d 926, 930 (8th Cir. 1994), and other circuits have applied the same limitations periods for claims under Title II of the ADA and the Rehabilitation Act. See, e.g., Everett, 138 F.3d at 1409-10.

In Faibisch, we held that Minnesota's six-year limitations period for personal injury actions applied to plaintiff's Rehabilitation Act claim. 304 F.3d at 802. Because the ADA and the Rehabilitation Act enforce the same substantive rights, we conclude that the six-year limitations period of Minn. Stat. § 541.05 applies to the Gaonas' ADA claim as well. Because this six-year period did not expire before the Gaonas filed suit, we reverse the district court's entry of summary judgment on their ADA claim.

## III.

Finally, the Gaonas claim that the district court erred in granting summary judgment on their Fair Housing Act claim. They contend that the district court incorrectly held that section 3605 of the FHA and related regulations do not require a lender to provide reasonable accommodations to disabled borrowers. See 42 U.S.C. § 3605 (2000).

42 U.S.C. § 3605 forbids discrimination, including disability-based discrimination, in residential real estate-related transactions. Fair Housing Amendments Act of 1988, Pub. L. No. 100-403, § 6(c), 102 Stat.1622 (1988). Section 3605 specifically prohibits a lender from discriminating in making transactions available or in providing the terms or conditions of such transactions.

42 U.S.C. 3605(a).  According to the relevant HUD regulation,[7] prohibited practices under this section include, but are not limited to, (1) "failing or refusing to provide . . . information regarding the availability of loans or other financial assistance," and (2) "providing information which is inaccurate or different from that provided others, because of race, color, religion, sex, handicap, familial status, or national origin."  24 C.F.R. § 100.120(b) (2002).

To state a claim under § 3605, the Gaonas had to show: (1) they were members of a protected class; (2) they were attempting to engage in a "residential real estate-related transaction" with Town & Country and met all qualifications for doing so; (3) Town & Country refused to transact business with them despite their qualifications; and (4) Town & Country continued to engage in this type of transaction with other parties who had similar qualifications.  Mich. Protect. and Advoc. Serv., Inc. v. Babin, 18 F.3d 337, 346 (6th Cir. 1994).

Town & Country did not refuse to transact business with the Gaonas.  The Gaonas received all the required disclosures and notices, and there was no evidence

_____

[7]The Gaonas also cite HUD regulation, 24 C.F.R. § 100.204 (2002), as evidence that the FHA contains a general "reasonable accommodation" requirement. However, this regulation applies only "when such accommodations may be necessary to afford a handicapped person equal opportunity *to use and enjoy a dwelling unit*." 24 C.F.R. § 100.204(a) (emphasis added).  This regulation does not apply to 42 U.S.C. § 3605, but rather to 42 U.S.C. § 3604(f)(2) (2000), which bars discrimination in sales and rentals, rather than loans, and defines discrimination, among other things, as "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(2)(B).  See, e.g., Bronk v. Ineichen, 54 F.3d 425, 429 (7th Cir. 1995) (deaf tenant's need to keep a hearing dog at rental property as an accommodation was reasonable within the meaning of the statute); Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 335 (2d Cir. 1994) (nearby parking is a substantial factor in mobility-impaired tenant's "use and enjoyment" of her dwelling).

that they were given inaccurate or differing information from that provided to other borrowers. Because 42 U.S.C. § 3605 does not define discrimination to include a lender's refusal to make reasonable accommodations, Town & Country was under no obligation under section 3605 of the FHA to provide a sign language interpreter for the Gaonas. Thus, the district court did not err in granting summary judgment on this claim.

## IV.

For these reasons, we affirm the district court's dismissal of the Gaonas' Truth in Lending Act and Fair Housing Act claims, but reverse its dismissal of their Title III ADA claim. We remand this claim to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-