Michael CARR, Plaintiff,

v.

LOCAL UNION 1593, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS; and International Brotherhood of Electrical Workers, Defendants.

No. A1–04–18.

United States District Court,
D. North Dakota,
Southwestern Division.

July 22, 2004.

Moody M. Farhart, Farhart, Lian, Maxson, Louser & Zent, P.C., Lynn M. Boughey, Minot, ND, for plaintiff.

Patrick J. Ward, Zuger, Kirmis & Smith, Bismarck, ND, Patrick A. Donovan, Hazen, ND, Mark G. Schneider, Schneider, Schneider & Schneider, Fargo, ND, Robert D. Kurnick, Sherman, Dunn, Cohen, Leifer & Yellig PC, Washington, DC, Daniel E. Phillips, Solberg, Stewart, Miller & Johnson Ltd., Fargo, ND, for defendants.

MEMORANDUM AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

HOVLAND, Chief Judge.

Before the Court is the Defendants' Motion for Partial Judgment on the Pleadings filed on April 28, 2004, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants the motion in part.

## I. BACKGROUND

The plaintiff, Michael Carr ("Carr"), is an employee of the Dakota Gasification Company ("Dakota Gasification") in Beulah, North Dakota. Carr is part of a bargaining unit represented by the International Brotherhood of Electrical Workers Local Union 1593 ("Local 1593") and is covered by a collective bargaining agreement. Carr also named the International Brotherhood of Electrical Workers ("IBEW") as a defendant. For simplicity sake, the Court will refer to both Local 1593 and IBEW as the "Union."[1]

In February 2002, Carr was working in the Oxygen Unit at Dakota Gasification. He was classified as a Tech V. Carr then applied for a transfer to the Wastewater Unit within Dakota Gasification. The Wastewater Unit position was classified as a Tech I. Carr believed he would retain his Tech V classification after the transfer because this had been the practice at Dakota Gasification. Carr accepted the transfer. However, on February 12, 2002, Dakota Gasification posted a memorandum changing the transfer policy effective immediately. The memorandum stated that when a grade and/or pay rates appear on a job posting, any applicant whose grade and pay rate is above those listed in the job posting will be subject to a two-grade reduction. On March 11, 2002, when Carr transferred to the Wastewater Unit his wages were reduced to a Tech III classification. On March 28, 2002, Carr filed a

---

1. Carr also named the American Federation of Labor–Congress of Industrial Organizations (ALF–CIO) as a defendant. The ALF– CIO was dismissed from the suit on June 17, 2004.

grievance with the Union. The grievance was denied in Steps One, Two, and Three. Carr then requested an arbitration hearing and a hearing was held on March 5, 2003. On April 25, 2003, the grievance was denied.

In the meantime, Carr was told that if he did not test to the Tech III level by March 10, 2003, he would be reduced to a Tech I. On March 10, 2003, Carr was reduced to a Tech I. Carr filed another grievance on March 24, 2003. The outcome of this grievance is unclear.

Carr served a summons and complaint on the Union on February 14, 2004. In his complaint, Carr set forth four claims (1) breach of contract, alleging that defendants violated the IBEW Constitution by failing to provide Carr with adequate representation; (2) breach of the duty of fair representation, alleging that Local 1593 breached its duty by making changes to the collective bargaining agreement and by failing to "fight for [Carr's] rights" when his pay grade was reduced; (3) misrepresentation and reliance, alleging that Defendants engaged in actionable conduct under state law by making misrepresentations to Union members on which Carr relied to his detriment; and (4) violations of the North Dakota Labor–Management Relations Act, alleging that the Defendants committed unfair labor practices prohibited by the North Dakota Labor–Management Relations Act. The Defendants have moved for judgment on the pleading seeking the dismissal of the third and fourth claims in the complaint.[2] They allege the state law claim for misrepresentation and reliance fails to state a claim on which relief can be granted because the claim is preempted by the federal duty of fair representation. In addition, they allege the

claim for violation of the North Dakota Labor–Management Relations Act must be dismissed for lack of subject matter jurisdiction because the National Labor Relations Act ("NLRA") gives the National Labor Relations Board ("NLRB") exclusive jurisdiction over conduct prohibited by that Act.

## II. LEGAL ANALYSIS

When considering a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, the Court must accept all of the factual allegations set out in the complaint as true and construe the complaint in a light most favorable to the plaintiff. *Faibisch v. University of Minnesota,* 304 F.3d 797, 802 (8th Cir.2002). Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law. *Id.*

### A. MISREPRESENTATION AND RELIANCE CLAIM

In his complaint, Carr alleges that the Union falsely represented to its members that Dakota Gasification could not change its past practices without first negotiating with the Union and that Carr relied to his detriment on that misrepresentation when he accepted a job that resulted in a reduction in pay, contrary to the Dakota Gasification's past practice. Carr complains such action violates North Dakota state law governing misrepresentation and reliance. In its motion to dismiss, the Union alleges this claim must fail because it is preempted by the federal duty of fair representation.

---

**2.** Defendant IBEW filed a Motion for Partial Summary Judgment on April 28, 2004, and two days later, on April 30, 2004, Defendant

IBEW Local 1593 filed its own Motion for Partial Summary Judgment adopting the brief submitted by IBEW.

 It is well-established that as the exclusive bargaining representative of the employees, the Union has a duty to fairly represent all those employees. *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Under the doctrine of the duty of fair representation, "the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.* It is also well-established that a complaint alleging a breach by the Union of this duty grounded in federal statutes is governed by federal law. *Id.*

 The Eighth Circuit has not addressed the issue of whether a claim of misrepresentation and reliance based in state tort law is preempted by the federal statutory duty of a union's fair representation under the National Labor Relations Act. However, in *Skyberg v. United Food and Commercial Workers Int'l Union, AFL–CIO,* 5 F.3d 297, 302 (8th Cir.1993), the Eighth Circuit held that a complaint alleging a union affirmatively misrepresented and failed to inform union members of the ramification of the employees refusal to cross picket lines was a claim that the union breached its duty of fair representation. Another federal district court succinctly summarized the preemptive effect of the duty of fair representation.

> [The duty of fair representation] is derived from sections 8(b) and 9(a) of the NLRA, 29 U.S.C. § 158(b) and 159(a), which authorize a union to act as the exclusive representative of all the employees in the collective bargaining process. As the employees' agent, a union owes each employee the "duty of fair representation," i.e. the duty to act "without hostility or discrimination . . .

to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). State law claims are preempted if they attempt to impose obligations on a union that are subsumed by this duty. See *Condon v. Local 2944, United Steelworkers of America, AFL–CIO,* 683 F.2d 590, 595 (1st Cir.1982) (state-imposed duties on the union are preempted unless they "arise wholly outside the ambit of those obligations circumscribed by a union's duty of fair representation under the collective bargaining agreement"); *Peterson v. Air Line Pilots Ass'n Int'l,* 759 F.2d 1161, 1169 (4th Cir.) cert. denied, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985) (the preemption inquiry in "DFR" [duty of fair representation] cases is "whether the duty of fair representation claim itself 'preempts' the power of the district court to exercise its pendent jurisdiction over related state law claims."); *Oliva v. Wine, Liquor and Distillery Workers Union, Local One,* 651 F.Supp. 369, 371 (S.D.N.Y. 1987) (fraud claim was "nothing more than recharacterization [ ]" of claim for breach of duty of fair representation (citations and internal quotations omitted)). Thus, if the state claim "creat[es] no new rights for an employee and impos[es] no new duty on a union not already clearly present under existing federal labor law," it is preempted. *Welch v. General Motors Corp., Buick Motor Div.,* 922 F.2d 287, 294 (6th Cir. 1990) (quoting *Maynard v. Revere Copper Products, Inc.,* 773 F.2d 733, 735 (6th Cir.1985)).

*Snay v. U.S. Postal Service,* 31 F.Supp.2d 92, 99 (N.D.N.Y.1998).

In his complaint, Carr alleged

> That the Defendants have made misrepresentations, promises and declarations to the employees and members of the

Union, which Plaintiff, Michael Carr, as an employee of DGC and a member of the Union had relied on to his detriment. That expectations have been created by the Union's representation and promises, which they have failed to meet. That the broken promises and the misrepresentation have caused Plaintiff, Michael Carr, to suffer economic and non-economic damages.

That Defendants are guilty of misrepresentation, negligent misrepresentation.

Complaint, ¶¶ 33–35.

■ At its core, Carr claims the Union made false statements which he relied upon to his detriment. The Court finds these actions fall within the Union's duty of fair representation. See *Skyberg v. United Food and Commercial Workers Int'l Union, AFL–CIO,* 5 F.3d 297, 302 (8th Cir.1993) (holding claims of affirmative misrepresentations by a union are a claim that the union breached its duty of fair representation). The Court finds Carr's state law claims of misrepresentation and reliance are an attempt to impose obligations on a union that are subsumed by the Union's duty of fair representation. A claim for misrepresentation and reliance does not create any new rights for an employee that the federal duty of fair representation does not already protect. Accordingly, Carr's third claim, misrepresentation and reliance, is preempted by the federal duty of fair representation imposed on the Union through the National Labor Relations Act.

The Court notes that Carr's complaint does not specify the law under which he is bringing his claim of misrepresentation and reliance. Viewing Carr's claims of misrepresentation and reliance in the light most favorable to him, as the Court must, the Court will treat Carr's claims of misrepresentation and reliance as a separate claim for breach of the duty of fair repre-

sentation, rather than dismiss these allegations. To summarize, Carr will not be allowed to proceed on a theory that the Union violated state law tort principles of misrepresentation or reliance, but he will be allowed to proceed on a claim that, through its alleged misrepresentations, the Union violated its duty of fair representation as recognized under federal law.

■ The Union also contends that any claim challenging the adequacy of its representation of Carr is time-barred. The Union states such a claim is governed by the six-month statute of limitations set forth in 29 U.S.C. § 160(b). In his response, Carr did not address the issue of the federal statute of limitations. Since this issue was not fully briefed by the parties, the Court is without sufficient information to determine whether the appropriate statute of limitations was violated. Therefore, the Court denies this portion of the Union's motion without prejudice. The Union is not precluded from bringing a motion to address the issue of timeliness of Carr's claims.

## B. NORTH DAKOTA LABOR–MANAGEMENT RELATIONS ACT CLAIM

Carr's fourth claim alleges violation of the North Dakota Labor–Management Relations Act. He alleges the Union has engaged in unfair labor practices as defined in the North Dakota Labor–Management Relations Act, found in Chapter 34–12 of the North Dakota Century Code. The Union asserts this claim must be dismissed for lack of subject matter jurisdiction because the National Labor Relations Act ("NLRA") gives the National Labor Relations Board ("NLRB") exclusive jurisdiction over conduct prohibited by that Act. Carr contends the contract between the Union and Dakota Gasification (Article 3, Section 7) authorizes the application of

state law. In the alternative, Carr argues the "local interest" exception of the preemption doctrine applies to the current case.

██ The United States Supreme Court has described the preemptive effect of the National Labor Relations Act as follows:

When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected be § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.

. . . . .

... When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

*San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon,* 359 U.S. 236, 244–45, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) (internal citations omitted). The preemptive effect of the National Labor Relations Act has two exceptions: (1) States are allowed to regulate activity that is merely peripheral to the concerns of the National Labor Relations Act, and (2)

where the regulated conduct touches interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, States are not deprived of the power to act.

██ In 1961, North Dakota enacted Chapter 34–12 entitled the North Dakota Labor–Management Relations Act. The Chapter governs topics such as employees rights to organize and engage in collective bargaining, unfair labor practices, and exclusive representation. N.D.C.C. § 34–12 et seq. Section 34–12–03 sets forth a lengthy list of unfair labor practices. Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, creates the right of employees to organize and engage in collective bargaining and Section 8, 29 U.S.C. § 158, defines unfair labor practices by employers and labor organizations. There is no question that the North Dakota Labor–Management Relations Act purports to regulate the same activity the National Labor Relations Act regulates, and thus, is preempted by the National Labor Relations Act.

██ Carr has asserted that the activities in question here are of the type that touches interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, States are not deprived of the power to act. Before the local interest exception is triggered, a plaintiff must satisfy the three local interest factors set forth in *Sears, Roebuck & Co. v. San Diego County District Council,* 436 U.S. 180, 196, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978). First, there must exist a significant state interest in protecting citizens from the challenged conduct. *Id.* Second, although the challenged conduct occurred in the course of a labor dispute and an unfair labor practice charge could have been filed, the exercise of state jurisdiction over the tort claim must entail little risk of

interference with the regulatory jurisdiction of the Labor Board. *Id.* Third, although the arguable federal violation and the state tort arose in the same factual setting, the respective controversies presented to the state and federal forums must not be the same. *Id.* The Court finds Carr has not shown that the local interest exception should apply. Carr simply parroted the factors rather than analyzing each factor and providing evidence which would support the application of this exception. The Court notes neither party asserted that the activity North Dakota has attempted to regulate with its Labor–Management Relations Act is activity that is merely peripheral to the concerns of the National Labor Relations Act. The Court is unconvinced either of the exceptions to the preemptive effect of the National Labor Relations Act are appropriate in this case. Accordingly, the Court further finds that any claim based on a violation of the North Dakota Labor–Management Relations Act is preempted by the National Labor Relations Act. Thus, this Court is without jurisdiction to hear such a claim.

 Finally, Carr asserts that the contract between the Union and Dakota Gasification authorized the application of North Dakota law. Carr cites to Article 3, Section 7, of the contract and argues he should be allowed to bring a claim under the North Dakota Labor–Management Relations Act. The Union contends this contract provision simply provides that any part of the agreement in conflict with applicable law will be of no effect and that the parties intended to comply with all existing laws. The Court agrees with the Union. Section 7 of the contract is merely a savings clause, allowing remaining portions of the contract to stay in effect if a particular portion is found to violate any state or federal law. The Court finds such a contract provision cannot provide the basis for federal subject matter jurisdiction.

## III. CONCLUSION

The Court GRANTS in part the Defendants' Motion for Partial Judgment on the Pleadings (Docket Nos. 21 and 24). The Court DENIES the Defendants' Request for Oral Argument. (Docket No. 32). The Plaintiff is precluded from proceeding on a theory that the Union violated state law tort principles of misrepresentation or reliance, but the Plaintiff is allowed to proceed on a claim that, through its alleged misrepresentations, the Union violated its duty of fair representation as recognized by federal law. In addition, the Defendants are not precluded from bringing a motion to address the issue of the timeliness of the Plaintiff's claims. Finally, the Plaintiff's claim based on a violation of the North Dakota Labor–Management Relations Act is preempted by the National Labor Relations Act, and the Court DISMISSES this claim with prejudice.

IT IS SO ORDERED.